UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JERRY A. MacCARTNEY, ) | |
| BERT MAYER, ) | |
| SHANNON A. McGLON, ) | |
| and ) | |
| ROBERT A. WINTER, ) | |
| ) | Civil Action No.: 2:05-cv-01207-MHT |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ONYX CAPITAL VENTURES, L.L.C., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT ONYX CAPITAL VENTURES, L.L.C.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION, IMPROPER VENUE AND INSUFFICIENCY OF
<u>SERVICE OF PROCESS, OR ALTERNATIVELY, TO TRANSFER</u>**

Unable to pursue their previously initiated employment discrimination claims against their former employer due to its ongoing bankruptcy proceedings, Plaintiffs have instead targeted Onyx Capital Ventures, L.L.C. ("Onyx"), a Chicago, Illinois based company with no operations in Alabama that neither employed nor terminated Plaintiffs from their former positions at Piknik Products Company ("Piknik"). In essence, Plaintiffs have elected to sue Onyx, a non-employer of Plaintiffs, for employment discrimination allegedly committed by their former employer, Piknik. Although jurisdiction and venue over Piknik, a Montgomery, Alabama based company that formerly employed Plaintiffs prior to filing bankruptcy, may have been proper in this Court, neither is proper for Plaintiffs' "employment" claims against Onyx. Onyx had no employment relationship with Plaintiffs and its connection with Piknik is insufficient to subject it to being haled into court in Montgomery, Alabama, over seven hundred miles from its corporate headquarters. Indeed, Onyx was merely the parent company of the holding company that owned

a majority of the shares of Piknik. This tenuous corporate relationship between Onyx and Piknik is insufficient to confer personal jurisdiction over Onyx or make venue proper in this district. The law is clear that corporate affiliates cannot be haled into court in distant venues simply by virtue of such affiliations. In the least, this case should be transferred for the convenience of the parties to the Northern District of Illinois, the district where Onyx resides and where the key witnesses and documents are located.

## BACKGROUND AND FACTS

Onyx is a Delaware limited liability company with its primary place of business in Chicago, Illinois. (Declaration of Jeffery Larry ("Larry Decl.") ¶ 2, attached hereto as Exhibit A.) Onyx is the sole shareholder of Piknik Acquisition Corp., L.L.C. ("PAC"), a Delaware holding company. (Larry Decl. ¶ 2.) On July 25, 2003, PAC became the majority owner of the outstanding shares of Piknik, Plaintiffs' former employer. (Larry Decl. ¶ 3.) Piknik is an Alabama corporation with its principal place of business in Montgomery, Alabama. (Id.)

After PAC acquired the majority interest in Piknik, Piknik continued its operations as normal and remained financially independent from Onyx. (Id.) Piknik's daily management personnel remained in place after PAC acquired Piknik's majority interest. (Id.) Piknik's senior management also remained in place, except that Jeffery Larry, an African American equity owner in Onyx, assumed the title of CEO of Piknik. (Id.) Larry, however, was not involved in the day-to-day operations of Piknik, received no compensation from Piknik, and resided in Chicago, not Montgomery. (Larry Decl. ¶ 8.) As part of the initial transaction, PAC and Piknik also entered into a Management Agreement wherein, at the request of the CEO of Piknik, PAC (Onyx's wholly owned subsidiary) occasionally provided consulting services to Piknik in areas such as merger and acquisitions, customer and supplier relationships, cash management and

expenditures, accounting systems and controls, and financing and bank relationships. (Larry Decl. ¶ 4.)

Months after the acquisition, Piknik's President, who had held that position since before PAC's acquisition of Piknik, resigned. (Declaration of Christopher Day ("Day Decl.") ¶ 3, attached hereto as Exhibit B.) While trying to fill the newly vacant position, Piknik hired Patrice Daniels, an owner of a small equity interest in Onyx, as Piknik's Executive Vice President for Sales and Finance, and Christopher Day as Piknik's Executive Vice President of Operations and Human Resources. (Id.) Daniels and Day served in their Executive Vice President positions until June 2004 when Piknik hired William McLennan to serve as its President. (Id.) McLennan, who had no relationship to Onyx, left Piknik in February 2005. (Id.) This time, Day was hired by Piknik as its President, a position he held until Piknik's lenders replaced him in July 2005.[1] (Day Decl. ¶ 3.) As Piknik's President, Day made the employment decisions concerning Plaintiffs in June 2005. (Day Decl. ¶¶ 4-6.) Day performed his duties as President in Piknik's corporate offices in Montgomery, and received his salary from Piknik pursuant to a written employment agreement. (Day Decl. ¶ 4.) Onyx did not pay Day any compensation. (Id.)

During PAC's ownership of Piknik, Onyx and Piknik operated as independent corporations. (Larry Decl. ¶ 7.) Piknik acted on its own behalf in making business, administrative, and personnel decisions; Onyx did not review, approve, or participate in any such decisions. (Larry Decl. ¶¶ 6, 7; Day Decl. ¶¶ 4-6.) Piknik maintained its own corporate and personnel records and adhered to all corporate formalities. (Day Decl. ¶ 5.) Piknik had its own

---

[1] At the same time Day was replaced, Piknik's lenders also removed Larry as CEO of Piknik. (Larry Decl. ¶ 5.) Piknik's lenders were able to remove both Larry and Day when it obtained the voting rights of PAC's majority shares in Piknik upon the occurrence of certain financial conditions specified in the loan documents. (Id.) Piknik's lenders, not Onyx, eventually put Piknik into bankruptcy in September 2006. See In re Piknik Products Co., Inc., Case No. 05-33035 (Bankr. M.D. Ala. filed Sept. 29, 2005.) Onyx is a creditor of the Piknik bankruptcy estate. (Larry Decl. ¶ 5.)

3

officers and board of directors, offices, employees, and clients. (Id.) Piknik maintained its own bank accounts from which it paid its employees and debt. (Id.) Onyx was never licensed to do business in Alabama and never engaged in any business in Alabama. (Larry Decl. ¶ 7.) Onyx never had any real or personal property, offices, facilities, telephone listings, or bank accounts in Alabama. (Id.) Piknik was never authorized as an agent of Onyx or to act on Onyx's behalf. (Id.) In fact, pursuant to the Management Agreement, PAC acted as Piknik's agent. (Id.) While employed by Piknik, Day acted solely on behalf of, and in the interest of Piknik; Day did not draw a salary from Onyx at the time. (Day Decl. ¶ 4.) Similarly, Larry kept his Piknik and Onyx roles independent from one another: when he acted on behalf of Onyx, he did so solely on behalf of Onyx, and when he acted on behalf of Piknik, he did so solely on behalf of Piknik. (Larry Decl. ¶ 8.) He visited Alabama solely in his role as Piknik's CEO and never made or participated in any of Piknik's employment or personnel decisions. (Id.) In fact, on only one occasion did Onyx employees who were not also Piknik employees visit Alabama, and that visit was unrelated to these employment claims. (Larry Decl. ¶ 7.)

During their employment, Plaintiffs were employed by Piknik, not Onyx. (Day Decl. ¶ 6; EEOC Addendum to the Charge of Discrimination of Bert Mayer ("Mayer EEOC Addendum"); EEOC Addendum to the Charge of Discrimination of Robert A. Winter ("Winter EEOC Addendum"); EEOC Addendum to the Charge of Discrimination of Shannon McGlon ("McGlon EEOC Addendum"); EEOC Addendum to the Charge of Discrimination of Jerry MacCartney ("MacCartney EEOC Addendum")[2]). In fact, Plaintiffs were all employed in their positions when PAC acquired Piknik in July 2003 and were not discharged until they resigned or Piknik terminated their employment for non-discriminatory, legitimate reasons in June 2005, nearly two

---

[2] The EEOC Addendums are attached hereto respectively as Exhibits D through G. In each of their respective addendums, the Plaintiffs expressly state: "I was employed by Piknik Products Company."

4

years after Onyx's acquisition of Piknik and as Piknik was spiraling toward its Chapter 11 bankruptcy filing.[3] (See id.) Regardless of the lawfulness of Piknik's actions, Onyx did not review, approve, or participate in any employment decisions regarding Plaintiffs. (Larry Decl. ¶¶ 6-8; Day Decl. ¶¶ 5, 6.) When Day, who shares the same race as Plaintiffs, made the personnel decisions regarding Plaintiffs, he did so solely in the scope of his employment as Piknik's President. (Day Decl. ¶¶ 5, 6.) The decisions to reduce salaries and terminate employees were made solely by Piknik and the agents and employees of Piknik. (Larry Decl. ¶¶ 6-8; Day Decl. ¶¶ 5, 6.)

Thereafter, Plaintiffs began pursuing their alleged employment discrimination claims against Piknik, their former employer, by filing charges with the EEOC. (See infra footnote 7.) It was only after the prospect of any recovery against Piknik was greatly reduced when Piknik was placed into bankruptcy that Plaintiffs filed their employment claims against Onyx, a non-employer. In re Piknik Products Co., Inc., Case No. 05-33035 (Bankr. M.D. Ala. filed Sept. 29, 2005.)

## ARGUMENT

I.   **The Claims Should Be Dismissed Because This Court Lacks Personal Jurisdiction Over Onyx.**

This Court lacks personal jurisdiction over Onyx, and thus, Plaintiffs' complaint must be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. A court may exercise personal jurisdiction over an out-of-state defendant only if the forum state's long-arm statute permits jurisdiction over that defendant, and personal jurisdiction over that defendant

---

[3] Plaintiff Winter resigned and Plaintiffs McGlon, MacCartney, and Mayer were terminated by Piknik for non-discriminatory, legitimate reasons emanating from Piknik's dire financial condition in the June 2005 timeframe that led to the July 2005 takeover of Piknik's operations by its lender and eventual bankruptcy filing in September 2005. (Day Decl. ¶ 6.)

comports with federal due process. See Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945); Portera v. Winn Dixie of Montgomery, Inc., 996 F. Supp. 1418, 1423 (M.D. Ala. 1998). Alabama's long-arm statute extends "to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." Mercantile Capital LP v. Fed. Transtel, Inc., 193 F. Supp. 2d 1243, 1248 (N.D. Ala. 2002); Ala. R. Civ. P. 4.2(b); Committee Comments to Amendment to Ala. R. Civ. P. 4.2 (Alabama's long-arm statute "has consistently been interpreted to go to the full extent of federal due process."). Thus, Plaintiffs need to prove that personal jurisdiction over Onyx comports with federal due process.

Federal due process requires that a defendant have "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (internal quotations omitted); Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000). The nature and quality of the "minimum contacts" required by due process vary depending upon whether the court has general or specific jurisdiction over the defendant. Consolidated Dev., 216 F.3d at 1291. A court may exercise general jurisdiction "over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." Portera, 996 F. Supp. at 1423 (quoting United States Secs. & Exch. Comm'n v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997)). For general personal jurisdiction to exist, however, the defendant must have "continuous and systematic" business contacts with the state. Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th 1986); Consolidated Dev., 216 F.3d at 1292. Alternatively, a court may exercise specific jurisdiction over a non-resident defendant "in a suit arising out of or related to the defendant's contacts with the forum." Portera, 996 F. Supp. at 1423 (quoting Carrillo, 115 F.3d at 1542 n.2). For specific personal jurisdiction to exist, the defendant must have "purposefully

6

availed itself" of the benefits of conducting activities within the state, such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Consolidated Dev., 216 F.3d at 1291-92. A defendant cannot be haled into court in a forum "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations omitted); Mercantile Capital, 193 F. Supp. 2d at 1248.

### A. Onyx lacks sufficient "minimum contacts" to render it subject to personal jurisdiction in Alabama.

As Onyx did not participate in any "continuous or systematic" activities in Alabama, it cannot be subject to general jurisdiction in Alabama. Onyx is an Illinois corporation, organized under Delaware law, with its principal place of business in Illinois. Onyx is not licensed to do business in Alabama and does not do business in Alabama. (Larry Decl. ¶ 7.) Onyx owns no property, real or personal, in Alabama and has no offices or facilities in Alabama. (Id.) Onyx maintains no bank accounts in Alabama and has no telephone listing in Alabama. (Id.) Although Day worked in Alabama, he did so solely as an employee of Piknik, not of Onyx. (Day Decl. ¶ 4.) When Larry visited Alabama, he did so in his capacity as Piknik's CEO. (Larry Decl. ¶ 8.) Moreover, a single visit by non-Piknik Onyx employees to Piknik's offices in Alabama is insufficient to establish that Onyx had "continuous and systematic" contacts in Alabama. (See Larry Decl. ¶ 7); see also Consolidated Dev., 216 F.3d at 1292-93; Mercantile Capital, 193 F. Supp. 2d at 1248. In this case, Onyx lacks sufficient "minimum contacts" to render it subject to general personal jurisdiction in the state of Alabama.

Further, Onyx is not subject to specific jurisdiction as it did not participate in any decisions concerning Plaintiffs' employment in this case, and it did not review or approve any

7

decisions made regarding the terms and conditions of employment of Piknik employees. (Larry Decl. ¶¶ 6-8; Day Decl. ¶¶ 5, 6.) When Day made the decisions to terminate certain of the Plaintiffs, he was not acting – and did not have the right or capacity to act – on behalf of Onyx.[4] (Day Decl. ¶ 6.) Plaintiffs' claims against Onyx are based solely on the "unilateral activity of . . . a third person," Piknik, which is insufficient to confer personal jurisdiction on Onyx in this case. Mercantile Capital, 193 F. Supp. 2d at 1248. As Onyx did not participate in or make any specific personnel decisions related to the cause of action in this case, it did not "purposefully availed" itself of any benefits of Alabama and cannot be subject to specific jurisdiction in the state.

  **B. Onyx cannot be subject to personal jurisdiction in Alabama through Piknik's contacts with Alabama.**

Personal jurisdiction cannot be asserted over Onyx based on Piknik's contacts with Alabama. Where a "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." Portera, 996 F. Supp. at 1422 (quoting Wright & Miller, Fed. Prac. & Proc. Civil, 2d § 1069); Consolidated Dev., 216 F.3d at 1293-94 ("It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."). For this Court to have jurisdiction over Onyx based on Piknik's activities, Plaintiffs would have to pierce the corporate veil, see South Ala. Pigs, L.L.C. v. Farmer Feeders, Inc., 305 F. Supp. 2d 1252, 1258-59 (M.D. Ala. 2004) (holding that to find a parent corporation subject to jurisdiction based on its subsidiary's local activities, the plaintiff must show that the corporate form is disregarded by piercing the corporate veil);

---

[4] In this lawsuit naming Onyx as the sole defendant, the question is not whether Piknik acted discriminatorily, but what conduct Onyx engaged in that could possibly impose liability upon it.

8

LaSalle Bank N.A. v. Mobile Hotel Props., L.L.C., 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003), or show that Piknik was "formal only and without any semblance of individual identity" and "merely an agent" of Onyx. Portera, 996 F. Supp. at 1422; Consolidated Dev., 216 F.3d at 1294 (determining that in order for a parent corporation to be subject to personal jurisdiction based on a subsidiary's local activities, the plaintiff must show that the subsidiary's "corporate existence was simply a formality, and that it was merely [the parent's] agent"). There is no basis in fact, or need to avoid the perpetration of fraud against creditors, to pierce the corporate veil.[5] Nor is there any evidence that Piknik lacked any semblance of its own identity or that Piknik acted as Onyx's agent.

Onyx's and Piknik's separate and independent corporate identities must be respected because they each maintained separate and independent corporate forms. Piknik is an Alabama corporation, organized under Alabama law, with its principal place of business in Alabama. (Larry Decl. ¶ 3.) At all times, Piknik maintained its own corporate and personnel records and adhered to all corporate formalities. (Day Decl. ¶ 5.) Piknik had its own offices, employees and clients, and maintained its own bank accounts from which Piknik paid its employees and debt. (Id.) Piknik independently made its own business, administrative and personnel decisions; Onyx did not review, approve or participate in any such decisions. (Id.) Although Larry served as an officer of both Onyx and Piknik, when serving on Piknik's behalf he appropriately wore his "subsidiary hat" and when acting on Onyx's behalf he appropriately wore his "parent hat." (See Larry Decl. ¶ 8). The existence of common officers between a parent and subsidiary does not justify piercing the corporate veil or otherwise confer personal jurisdiction over the parent. Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 611 (D.N.J. 2004) (common officers and

---

[5] Far from perpetrating a fraud on creditors through its indirect ownership in Piknik, Onyx is itself a creditor of Piknik's bankruptcy estate. (Larry Decl. ¶ 5.)

directors are insufficient to establish jurisdiction over parent). At no time was Piknik acting on behalf of Onyx, nor did Onyx control the actions of Piknik. (Day Decl. ¶ 5.) In short, Onyx's only connection to Piknik was nothing more remarkable than as the parent corporation of the majority shareholder of Piknik.[6] Onyx's contact with this forum as the grandparent corporation of Piknik is insufficient to confer personal jurisdiction over Onyx or to hale it into this Court.

**II.     The Claims Should Be Dismissed Because This Venue Is Improper.**

Plaintiffs appear to assert that venue is proper in this District because the violations of their rights as alleged in the complaint occurred in Montgomery County, in the Middle District of Alabama. In a case that is not founded solely on diversity, venue is proper in a District "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." See Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371-72 (11th Cir. 2003). The relevant activities are those "of the defendant, not of the plaintiff." Id. (quoting Woodke v. Dahm, 70 F.3d 983 (8th Cir. 1995)).

Although venue may be proper in this District if Plaintiffs were suing Piknik, venue is improper in this District for Plaintiffs' claims against Onyx, who did not participate in any events in Alabama. (Larry Decl. ¶¶ 6-8.) Onyx remained in Illinois and did not participate in the resignation or terminations of Plaintiffs; rather, Piknik did. When Day made personnel decisions with respect to Plaintiffs, he did so solely on behalf of and in the interest of Piknik. (Day Decl. ¶ 6.) Even assuming Onyx participated in the terminations or that Onyx's policies led to Plaintiffs' terminations, neither of which is true, such decisions and policies by Onyx would not have been

---

[6] The fact that Piknik's lenders were able to remove Larry and Day from their positions at Piknik in July 2005 further shows that Piknik was not functioning as a corporate shell for Onyx. (See Larry Decl. ¶ 5.; Day Decl. ¶ 3.)

10

made in Alabama, but in Illinois, as Larry worked strictly from his office in Illinois when working for Onyx with respect to any business decisions relating to Onyx's relationship with Piknik. (Larry Decl. ¶ 10.) As Onyx did not engage in any substantial events or relevant activities in Alabama, venue is improper for this lawsuit solely against Onyx, and the claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).

### III. The Claims Should Be Dismissed Because Plaintiffs Have Failed To Properly Serve Onyx.

The complaint should also be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure because Plaintiffs have failed to properly serve Onyx. After the entry of default against Onyx, counsel for Onyx contacted counsel for Plaintiffs to explain the service failure, and proposed that Onyx would agree to waive service in exchange for Plaintiffs' voluntarily vacating the entry of default. Rather than accept Onyx's offer, which would have promoted judicial economy and saved Onyx expense, Plaintiffs refused and forced Onyx to file its Motion to Set Aside Entry of Default, to which Plaintiffs failed to even respond. On March 20, 2006, this Court granted Onyx's motion and set a response date, but made no finding as to whether Onyx had been properly served. Accordingly, Onyx now preserves its rights by asserting this defense, and hereby incorporates its Motion to Set Aside Entry of Default.[7] (Motion to Set Aside Entry of Default And/Or Default Judgment, attached hereto as Exhibit C.)

---

[7] As more fully set forth in Onyx's Motion to Set Aside Entry of Default, Plaintiffs' service attempts fail to comport with the requirements of Rule 4(h) of the Federal Rules of Civil Procedure, Rule 4(c)(6) of the Alabama Rules of Civil Procedure and 735 ILCS 5/2-204, the rules governing proper service that require a plaintiff to serve a complaint upon an officer, manager, agent, general agent, partner, or other agent authorized by appointment or law. Fed. R. Civ. P. 4(h); Ala. R. Civ. P. 4(c)(6); 735 ILCS 5/2-204. None of the rules permit service upon a corporation generally as Plaintiffs have so attempted in this instance by mailing the complaint and summons generally to "Onyx Capital Ventures, LLC" rather than to the attention of any specific individual authorized by appointment or law to accept service for Onyx.

**VI.     If Venue Is Proper In This District, Then For The Convenience Of The Parties And In The Interest Of Justice, This Action Should Be Transferred To The Northern District Of Illinois.**

If venue is proper in this District, this action should be transferred to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §1404(a) because it is the more appropriate forum for this action.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. §1404(a).  Transfer is appropriate under Section 1404(a) where the court finds that:  (1) the action could have originally been brought in the proposed transferee district court; and (2) a transfer would "best serve the convenience of the parties and the witnesses and the interests of justice."  Intergraph Corp. v. Stottler, Stagg & Assocs., 595 F. Supp. 976, 978 (N.D. Ala. 1984); Folkes v. Haley, 64 F. Supp. 2d 1152, 1154-55 (M.D. Ala. 1999) ("A district court may properly transfer a case to 'the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be most easy, expeditious and inexpensive.'" (quoting Hutchens v. Bill Heard Chevrolet, Co., 928 F. Supp. 1089, 1090 (M.D. Ala. 1996)).

**A.     This action could originally have been brought in the Northern District of Illinois.**

Section 1391(b)(1) provides that a civil action not founded solely on diversity jurisdiction may be brought in a district "where any defendant resides, if all defendants reside in the same State."  28 U.S.C. §1391(b)(1).  Venue is proper in the Northern District of Illinois under 28 U.S.C. §1391(b)(1) because Onyx, the lone defendant, resides in the Northern District of Illinois.

**B.     Transfer is for the convenience of the parties and witnesses.**

When evaluating convenience to the parties and witnesses, courts generally consider the following factors:  (1) the plaintiff's choice of forum; (2) convenience of the parties; (3)

convenience of the witnesses; (4) ease of access to sources of proof; (5) the court's ability to compel the appearance of witnesses; (6) the location of relevant documents; (7) the financial ability to bear the cost of the transfer; and (8) trial efficiency.  LaSalle Bank N.A., 274 F. Supp. 2d at 1301; Folkes, 64 F. Supp. 2d at 1155; Johnston v. Foster-Wheeler Constructors, Inc., 158 F.R.D. 496, 504 (M.D. Ala. 1994).  Courts also consider "where the operative facts underlying the cause of action transpired."  Johnston, 158 F.R.D. at 504.  The most important factor a court considers when deciding a Section 1404(a) motion to transfer is the convenience of the witnesses.  Insuracorp, Inc. v. Am. Fidelity Assurance, 914 F. Supp. 504, 506 (M.D. Ala. 1996); Hutchens, 928 F. Supp. at 1091; Irwin v. Zila, Inc., 168 F. Supp. 2d 1294, 1296 (M.D. Ala. 2001) ("[T]he forum in which the majority of material principal witnesses reside is the most convenient forum."); see Folkes, 64 F. Supp. 2d at 1155 ("The residence of the majority of material principal witnesses is an important factor to consider when passing on a motion to transfer under § 1404(a).").

The convenience of witnesses, the most strongly weighted factor, favors transfer to the Northern District of Illinois.  The key fact witnesses to this case will be the former Piknik employees and agents that participated in the personnel decision-making process regarding Plaintiffs, as well as the Onyx employees and agents who were allegedly sufficiently involved in any such decisions as to impose independent liability on Onyx.  As Piknik is no longer conducting business, its employees and agents are not necessarily still residing in Alabama. Onyx has identified the following individuals with relevant testimony concerning Onyx's lack of involvement in the personnel decision-making process of Piknik, including with regard to the Plaintiffs, both of whom reside in the Chicago metropolitan area:

> Jeffery Larry – Onyx equity holder and former Piknik CEO, who can testify to Onyx's lack of business engagement in Alabama and his lack of participation in the personnel decisions.
>
> Christopher Day – Former Piknik President, who can testify to the rationale for Piknik's personnel decisions and Onyx's lack of participation in the decisions.

(Larry Decl. ¶¶ 6-8; Day Decl. ¶¶ 5, 6.) Onyx has also identified the following individuals with relevant testimony concerning the motivation and rationale for Piknik's personnel decisions, neither of whom reside in the Middle District of Alabama:

> Henry Hicks – Former Piknik supervisor, who can testify to the circumstances of Winter's resignation.
>
> Anthony Barber – Former Piknik supervisor, who can testify to the rationale for Mayer's, MacCartney's, and McGlon's terminations.

(Day Decl. ¶¶ 7, 8.)[8] Hicks and Barber would not be overly inconvenienced by a transfer in this case as neither of them reside in the Middle District of Alabama; Hicks resides in Atlanta, Georgia, and Barber resides in Texas. (Id.)

The ease of access to sources of proof also supports transfer of venue. Documents prepared and maintained by Onyx employees and agents relevant to Onyx's lack of involvement with Plaintiffs' employment decisions are located in Onyx's headquarters in Chicago, Illinois. (Larry Decl. ¶¶ 9, 10.) Documents regarding communications between Onyx and Piknik employees will be more readily available in the files of Onyx in Chicago, rather than with the files of the bankrupt and liquidating Piknik. (Day Decl. ¶ 10.)

The fact that the operative facts (or lack thereof) regarding Onyx's alleged liability transpired in Illinois also favors transfer to the Northern District of Illinois. The operative facts

---

[8] In fact, Plaintiffs themselves recognize that Messrs. Barber and Hicks, neither of whom reside in this district, are relevant third-party witness through Plaintiffs' express identification of these individuals in their respective EEOC charges against Piknik. (See Mayer EEOC Addendum; Winter EEOC Addendum; McGlon EEOC Addendum; MacCartney EEOC Addendum).

14

underlying the cause of action in this case against Onyx are Onyx's, not Piknik's, alleged intentions to discriminate against Plaintiffs.  As Onyx maintains and operates its business in Illinois, any decisions made by Onyx regarding Piknik were made by Onyx in Illinois.  (Larry Decl. ¶ 10.)  Any alleged influence Onyx may have had on Piknik also transpired in Illinois, as all of Onyx's policies were created by Onyx in Illinois.  (Id.)  As all of the necessary documentation and testimony relevant to Plaintiffs' allegations and Onyx's defenses is located in Illinois, this factor also favors a transfer to the Northern District of Illinois.

Although Plaintiffs' choice of forum is given weight, "if [a] Plaintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expedition of the discovery and trial processes, a district court has discretion to disregard the plaintiff's choice of forum and transfer the action to a forum that better promotes these interests." Intergraph Corp., 595 F. Supp. at 978; cf. Irwin, 168 F. Supp. 2d at 1296 n.2 ("It should be noted that the high burden imposed upon defendants has been criticized on the ground that the bar unnecessarily has been set too high.  The standard is a vestige of the forum non conveniens analysis wherein the harsh remedy of dismissal was granted to moving defendants rather than a mere transfer of venue.").  The convenience of the witnesses, the location of relevant documents, and the location of the occurrence of the operative facts underlying the cause of action clearly support a transfer to the Northern District of Illinois.  See Folkes, 64 F. Supp. 2d at 1155 (transferring case due to location of material principal witnesses, the location of the occurrence of the challenged practices, and the ease of access to sources of proof); A.J. Taft Coal Co. v. Barnhart, 291 F. Supp. 2d 1290, 1310-12 (N.D. Ala. 2003) (transferring case because majority of material principal witnesses and sources of proof were likely to be in transferee district, and operative decision giving rise to lawsuit occurred in transferee district); Irwin, 168 F. Supp. 2d at 1296-97

15

(transferring case due to residence of material principal witnesses, the substantial amount of documents in the transferee forum, and the previous existence of a similar case in the transferee court).

### C. Transfer is in the interest of justice.

The interest of justice favors a transfer to the Northern District of Illinois. "An important consideration in deciding appropriate venue is whether a forum can meet the personal jurisdiction and venue requirements for most or all of the defendants." C.M.B. Foods, Inc. v. Corral of Middle Ga., 396 F. Supp. 2d 1283, 1287-89 (M.D. Ala. 2005) (quoting Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1358 (11th Cir. 1990) (transferring case in the interest of justice, pursuant to 28 U.S.C. §1404, because the transferee District "unquestionably [met] the venue and personal jurisdiction requirements for all of the defendants in [the] lawsuit"). As this court does not have personal jurisdiction over Onyx, the interest of justice clearly favors transferring this case to the Northern District of Illinois.

In addition, Onyx desires a quick resolution of this dispute, and transfer will not cause delay. The Northern District of Illinois ranks as the fourth fastest median time From Filing to Disposition. (Copies of the Judicial Caseload Profile for the two districts ("Judicial Caseload Profiles") are attached hereto as Exhibit H.) As most employment cases are resolved by the summary judgment stage, see Chapman v. AI Transp., 229 F.3d 1012, 1025-26 (11th Cir. 2000), there will be no appreciable delay in disposition time if the case is transferred to the Northern District of Illinois. Transferring this case to the Northern District of Illinois is also appropriate as the average caseload on a Middle District of Alabama judge's docket is 477, whereas the average number of cases on a Northern District of Illinois judge's docket is only 350. (See

Judicial Caseload Profiles.) Thus, in the interest of justice and judicial efficiency, this case should be transferred to the Northern District of Illinois.

## **CONCLUSION**

Onyx does not have "minimum contacts" with this forum, and as such is not subject to jurisdiction in this Court. Additionally, the Middle District of Alabama is an improper venue for this action, and the service of process was deficient. Thus, the claims against Onyx should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(5) for want of personal jurisdiction, and improper venue, and insufficiency of service of process. Even if the Court determines venue is proper, the Court should transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. §1404.

Dated: March 31, 2006

        Respectfully submitted,

        ONYX CAPITAL VENTURES, L.L.C.

By: *s/George R. Parker*
    William C. McGowin (MCG040)
    George R. Parker (PAR086)
    Robert E. Poundstone IV (POU006)
    **Attorneys for Defendant**
    Bradley Arant Rose & White LLP
    Alabama Center for Commerce
    401 Adams Ave., Suite 780
    Montgomery, Alabama 36104
    Telephone: 334.956.7700
    Facsimile: 334.956.7701
    Email: wmcgowin@bradleyarant.com
           gparker@bradleyarant.com
           bpoundstone@bradleyarant.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 31st day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

      Keith Anderson Nelms, Esq.
      Jay Lewis, Esq.
      *Law Offices of Jay Lewis, LLC*
      P. O. Box 5059
      Montgomery, AL 36103-5059
      andynelms@jaylewislaw.com
      j-lewis@jaylewislaw.com

and I hereby certify that I have mailed by U. S. Postal Service the document to the following non CM/ECF participants:   n/a.

      Respectfully submitted,

      *s/George R. Parker*
      George R. Parker
      Bradley Arant Rose & White LLP
      Alabama Center for Commerce
      401 Adams Avenue, Suite 780
      Montgomery, AL 36104
      Phone:  (334) 956-7700
      Fax:  (334) 956-7701
      E-mail:  gparker@bradleyarant.com