UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JERRY A. MacCARTNEY, <br> BERT MAYER, <br> SHANNON a. McGLON, <br> and <br> ROBERT A. WINTER, <br>           Plaintiffs, <br> v. <br> ONYX CAPITAL VENTURES, L.L.C., <br>           Defendant. | Civil Action No.: 2:05-cv-01207-MHT <br><br> **DECLARATION** |

### DECLARATION OF JEFFERY LARRY

I, Jeffery Larry, declare and state as follows:

1. My name is Jeffery Larry. I reside in Chicago, Illinois and am of majority age, African American, have never been convicted of a felony, am competent to testify herein, and I do so based upon my personal knowledge, which is true and correct.

2. I am an equity owner in Onyx Capital Ventures, L.L.C. ("Onyx"), a Delaware limited liability company with its principal place of business in Chicago, Illinois. Onyx is the sole shareholder of Piknik Acquisition Corp., L.L.C. ("PAC"), a Delaware holding company.

3. On July 25, 2003, PAC became the majority owner of the outstanding shares of Piknik Products Company ("Piknik"), an Alabama corporation with its principal place of business in Montgomery, Alabama. After PAC acquired the majority interest in Piknik, Piknik continued its operations as normal, and remained financially independent from Onyx. Piknik's daily management personnel remained in place after the transaction. Piknik's senior management also remained in place, except that I assumed title of CEO of Piknik.


EXHIBIT A

1

4. Following PAC's acquisition of Piknik's majority shares, PAC and Piknik entered into a Management Agreement wherein, at the request of the CEO of Piknik, PAC (Onyx's wholly owned subsidiary) occasionally provided consulting services to Piknik areas such as merger and acquisitions, customer and supplier relationships, cash management and expenditures, accounting systems and controls, and financing and bank relationships.

5. In July 2005, Piknik's lenders obtained PAC's voting rights of the majority shares in Piknik upon the occurrence of certain financial conditions specified in loan documents. At that time, Piknik's lenders removed me as CEO of Piknik. On information and belief, it was Piknik's lenders who eventually put Piknik into bankruptcy in September 2006. Onyx is a creditor of Piknik's bankruptcy estate.

6. Onyx never employed Plaintiffs. Onyx did not review, approve, or participate in any employment decisions regarding Plaintiffs. All employment decisions made regarding Plaintiffs were made solely by Piknik and the employees and agents of Piknik. Before terminating Plaintiffs, Christopher Day, Piknik's President, advised me of his decision as CEO of Piknik and I deferred to his judgment.

7. During PAC's ownership of Piknik, Onyx and Piknik operated as independent entities. Onyx did not participate in any of Piknik's business, administrative, or personnel decisions. Onyx was never licensed to do business in Alabama, and never engaged in any business in Alabama. Onyx owns no property, real or personal, in Alabama, and has no offices or facilities in Alabama. Onyx maintains no bank accounts in Alabama and has no telephone listings in Alabama. On only one occasion did Onyx employees who were not also Piknik employees visit Alabama, and that visit was unrelated to these employment claims. Onyx never authorized Piknik as an agent to act on Onyx's behalf. In fact, pursuant to the Management Agreement, PAC acted as Piknik's agent.

8. As Piknik's CEO, I was not involved in any day-to-day operations of Piknik, I did not receive any compensation from Piknik, and I resided in Chicago, Illinois. I kept my Onyx and Piknik roles distinctly independent of one another: when I acted on behalf of Onyx, I did so solely on behalf of Onyx; when I acted on behalf of Piknik, I did so solely on behalf of Piknik. When I visited Alabama, I did so solely in my role as Piknik's CEO. When I represented Piknik as its CEO, I did so on behalf of Piknik. I never made or participated in any Piknik personnel or employment decisions.

9. Documents prepared and maintained by Onyx employees or agents relevant to what, if any, liability Onyx may have for Piknik's actions, are located in Onyx's headquarters, Chicago, Illinois.

10. When I worked for Onyx with respect to any business decisions relating to Onyx's relationship with Piknik, I did so from my office in Chicago, Illinois. Thus, any decisions Onyx made with respect to Piknik, if any, were made in Chicago Illinois. Any influence Onyx may have had on Piknik transpired in Illinois, as Onyx only operates and creates policies in Illinois.

11. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Sworn to this 30th   )
day of March 2006    )

_____
Jeffery Larry