UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JERRY A. MacCARTNEY,  )
BERT MAYER,  )
SHANNON a. McGLON,  )
and  )
ROBERT A. WINTER,  )
  )  Civil Action No.: 2:05-cv-01207-MHT
        Plaintiffs,  )
  )
v.  )  **DECLARATION**
  )
ONYX CAPITAL VENTURES, L.L.C.,  )
  )
        Defendant.  )

## DECLARATION OF CHRISTOPHER DAY

I, Christopher Day, declare and state as follows:

1.     My name is Christopher Day. I reside in Chicago, Illinois and am of majority age, Caucasian, have never been convicted of a felony, am competent to testify herein, and I do so based upon my personal knowledge, which is true and correct.

2.     I presently have no equity interest in Onyx Capital Ventures, L.L.C. ("Onyx"), nor am I, or was I ever, an officer of Onyx.

3.     Around January 2004, the then President of Piknik Products Company, ("Piknik") resigned. While searching for another President, Piknik hired Patrice Daniels and myself to serve as the Executive Vice President of Sales and Finance and the Executive Vice President of Operations and Human Resources, respectively. We were removed from our Piknik roles in June 2004, however, when Piknik hired William McLennan to serve as its President. McLennan, who had no relationship with Onyx, left Piknik in February 2005, and I was hired as President of Piknik. I served as Piknik's President until Piknik's lenders removed me in July 2005.

1

Doc #:CHI01 (213484-00007) 50343933v2:03/30/2006/Time:12:27


EXHIBIT
B

4.    I performed my duties for Piknik in Montgomery, Alabama. I received a salary as President of Piknik pursuant to a written employment agreement with Piknik, and drew no salary from Onyx. When acting as Piknik's President, I never acted in the interest of or on behalf of Onyx.

5.    At all relevant times, Piknik and Onyx operated as two independent corporations. Piknik acted on its own behalf in making business, administrative, and personnel decisions; Onyx did not participate in any such decisions. Piknik had its own officers and board of directors, maintained its own bank accounts from which it paid its employees and debt, and had its own offices, employees, and clients. Piknik maintained its own corporate records and adhered to all corporate formalities. Piknik never acted on behalf of Onyx and Onyx did not control the actions of Piknik.

6.    Plaintiffs were all employed by Piknik, not Onyx. Plaintiffs Mayer, MacCartney, and McGlon were terminated by me, acting solely in the interest of, and on behalf of Piknik, for non-discriminatory, legitimate reasons. The Plaintiffs' terminations resulted from their improper actions and behavior, as well as Piknik's dire financial condition that led to the July 2005 takeover of Piknik's operations by its lender and eventual bankruptcy filing in September 2005. I asked Jeff Larry, Piknik's CEO, for his input before terminating the Plaintiffs, but he left the decision making solely to me. The employment actions taken with regard to Winter were made solely by me, acting solely in the interest of, and on behalf of Piknik.

7.    Anthony Barber, a resident of Texas, was employed by Piknik from early 2005 until Piknik entered bankruptcy. Barber supervised and recommended for termination, Plaintiffs Mayer, MacCartney, and McGlon.

8.    Henry Hicks, a resident of Atlanta, was employed by Piknik from 2003 until Piknik entered bankruptcy.    Hicks supervised Plaintiff Winter and witnessed the events surrounding Winter's resignation.

9.    Brenda Sellers, Piknik's Human Resource Director, maintained all of Piknik's employment files, including the Plaintiff's employment records.

10.    Any documents regarding communications between Onyx and Piknik employees will be more readily available in Onyx's files in Chicago, rather than with the files of the bankrupt and liquidating company.

11.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Sworn to this 30th    )
day of March 2006    )

_____
Christopher Day