ONYX000281

## MANAGEMENT AGREEMENT

This **MANAGEMENT AGREEMENT** (this "Agreement") is entered into as of July 25, 2003, by and between **PIKNIK ACQUISITION CORP., LLC**, a Delaware limited liability company ("PAC"), and **PIKNIK PRODUCTS COMPANY, INC.**, an Alabama corporation (the "Company").

## RECITALS

**WHEREAS**, the Company is engaged in the business of the contract production and private-label manufacturing of foods and beverages (the "Business"); and

**WHEREAS**, pursuant to the terms and conditions of that certain Stock Purchase Agreement (the "Purchase Agreement"), dated as of July 25 2003, by and among the Company, PAC and Herman R. Loeb , an individual resident of the State of Alabama ("Loeb"), PAC has agreed to purchase from the Company 510 shares of Common Stock ("Stock Acquisition"); and

**WHEREAS**, in connection with the Stock Acquisition, the Company desires to obtain the services of PAC to consult with and perform services as an independent contractor for the Company, and PAC desires to consult with and perform services for the Company, upon the terms and conditions set forth in this Agreement; and

**WHEREAS**, the obligation of PAC and the Company to consummate the Stock Acquisition is conditioned on the execution and delivery of this Agreement by the Company.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein, the parties hereby agree as follows:

1. <u>Management Services</u>. The Company hereby engages PAC to render consulting, advisory and other special services and expertise to the Company, and PAC hereby accepts such engagement, for the Term (as defined in **Section 3** below). During the Term, PAC shall be available to consult with and render such services to the Company as the board of directors of the Company or officers of the Company from time to time requests, which services shall include, without limitation, providing merger and acquisition advisory services, acting as agent under the Company's debt facilities, operational consulting, reviewing requests for proposals for competitive bidding of services and products for the Company, attending periodic management meetings, providing other services related to business plans and strategy, employee benefits and compensation, insurance, cash management and expenditures, accounting systems and controls, financing and bank relationships, customer and supplier relationships, and review and analysis of capital expenditures. The amount of time devoted by PAC, and means and methods by which PAC performs its duties hereunder, shall be determined solely by PAC.

2. <u>Compensation</u>. In consideration of the services provided pursuant to **Section 1**, the Company will pay PAC an aggregate of Two Hundred Fifty Thousand Dollars ($250,000) (the "Management Fee") per calendar year during the Term, payable in equal monthly installments



EXHIBIT
2

00000413

ONYX000282

in advance on the first business day of each calendar month hereunder, commencing on August 1, 2003; provided, however, at the end of the first calendar year following the date hereof that the EBITDA of the Company for such calendar year equals or exceeds Six Million Five Hundred Thousand Dollars ($6,500,000), the Management Fee payable pursuant to this Section 2 shall automatically increase to Five Hundred Thousand Dollars ($500,000) per calendar year. Notwithstanding such increase in the Management Fee in the amount of Two Hundred Fifty Thousand Dollars (the "Increased Amount"), PAC and the Company agree that the Increased Amount shall not be paid to PAC but shall accrue until the Senior Debt is paid in full or the Senior Lender has approved payment of such Increased Amount to PAC. PAC shall also be entitled to reimbursement for reasonable out-of-pocket expenses incurred by PAC in connection with rendering the services set forth in Section 1 upon presentation of proper vouchers and receipts.

3. Term. The term of this Agreement (the "Term") shall commence on the date hereof and continue until the first to occur of the following: (a) all, or substantially all, of the Company's assets or stock are sold to an unaffiliated third party in an arm's length transaction, (b) PAC exercises its rights pursuant to Section 2 of that certain Put Agreement, dated as of the date hereof, among the Company, Loeb, and PAC; and (c) Loeb exercises his "call right" pursuant to Article IV of the Shareholders Agreement, dated as of the date hereof, among the Company, PAC and Loeb.

4. Indemnification. The Company will reimburse and indemnify PAC for and against any losses, damages, liabilities and expenses (including without limitation reasonable attorneys' fees) imposed on, incurred by or asserted against PAC solely in connection with the rendering of services by PAC (including its employees or affiliates) to the Company as set forth in Section 1; provided that the Company shall not be liable under this Section 4 or otherwise for any portion of such losses, damages, liabilities or expenses resulting directly from PAC's gross negligence, willful misconduct or willful breach of law.

5. Successors and Assigns. No party hereto may assign or delegate any of its rights or obligations hereunder without the prior written consent of the other party hereto, provided, however, that PAC shall have the right to assign all or any part of its rights and obligations under this Agreement to any Affiliate of PAC at any time. Except as otherwise expressly provided herein, all covenants and agreements contained in this Agreement by or on behalf of any of the parties hereto shall bind and inure to the benefit of the respective successors and assigns of the parties hereto whether so expressed or not.

6. Severability. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement.

7. Construction. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without regard to conflicts of law principles.

00000414

ONYX000283

8. <u>Definitions</u>. As used in this Agreement:

"Credit Agreement" means that certain Second Amended and Restated Credit Agreement, dated November 5, 2001, between the Company and SouthTrust Bank, N.A., Birmingham, Alabama.

"EBITDA" shall mean earnings before taxes, interest income and expense, depreciation and amortization expense, determined in accordance with GAAP; provided, however, that there shall be excluded from the calculation of earnings (to the extent representing a reduction of earnings in accordance with GAAP), the amount of any and all Losses (as defined in the Purchase Agreement) incurred or paid by the Company that have been sustained by a Buyer Indemnified Party (as defined in the Purchase Agreement) under circumstances entitling the Buyer Indemnified Party to indemnification pursuant to Article 8 of the Purchase Agreement.

"Senior Debt" means any and all Indebtedness (as defined in the Purchase Agreement), (excluding any trade payables of the Company in the ordinary course of business), now or hereafter owing from, or guaranteed by the Company or any of its subsidiaries pursuant to the Credit Agreement.

"Senior Lender" means SouthTrust Bank, N.A., Birmingham, Alabama, and any successor thereto as lender pursuant to the Credit Agreement

9. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument, and a facsimile of a signature shall be deemed to be the same, and equally enforceable, as an original of such signature.

10. <u>Headings</u>. The various headings used in this Agreement as headings for paragraphs, subparagraphs, and otherwise are for convenience only and shall not be used in interpreting the text in which they appear.

11. <u>Further Assurances</u>. Each party promises and agrees to execute and deliver, or cause to be executed and delivered, such additional or further instruments and to perform any acts, which may be reasonably required for the purpose of carrying out the transactions as contemplated hereunder.

12. <u>Entire Agreement; Waivers; Amendments</u>. This Agreement constitutes the entire and complete contract of the parties, and supercedes any and all other oral or written communication, with respect to the subject matter hereof. This Agreement cannot be changed, waived, released or discharged orally or by the conduct of any party. Any amendment, waiver, release or termination of this Agreement must be in writing and must contain the signature of each party hereto.

13. <u>Notices</u>. Any notices, consents or other communications required or permitted to be sent or given hereunder by any of the parties shall in every case be in writing and shall be deemed properly served if (a) delivered personally, (b) delivered by a recognized overnight

00000415

ONYX000284

courier service, or (c) sent by facsimile transmission to the parties at the addresses as set forth below or at such other addresses as may be furnished in writing. Such notices, demands and other communications shall be sent to the addresses indicated below:

(a)    If to the Company:

Piknik Products Company, Inc.
Post Office Drawer 9388
Montgomery, Alabama 36108-0388
Attention: Jeffery Larry
Facsimile: (334) 241-8402

with a copy to (which shall not constitute notice):

King & Spalding LLP
191 Peachtree Street
Atlanta, Georgia 30303-1763
Attention: Philip A. Theodore
Facsimile: (404) 572-5136

(b)    If to PAC:

Piknik Acquisition Corp., LLC,
c/o Onyx Capital Ventures, L.L.C.
525 W. Monroe St. Ste. 1600
Chicago, IL 60661
Facsimile: (312) 902-1061
Telephone: (312) 902-5254
Attention: Jeffrey Larry

with a copy to (which shall not constitute notice):

Katten Muchin Zavis Rosenman
525 West Monroe Street, Suite 1600
Chicago, Illinois 60661-3693
Attention:    Gerald M. Penner, Esq.
              Leslie D. Dent, Esq.
Fax No.:      (312) 902-1061

Date of service of such notice shall be (w) the date such notice is personally delivered, (x) three business days after the date of mailing if sent by certified or registered mail, (y) one business day after date of delivery to the overnight courier if sent by overnight courier or (z) the next succeeding business day after transmission by facsimile.

ONYX000285

[Signature page follows]

ONYX000286

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement as of the date first above written.

PAC:

**PIKNIK ACQUISITION CORP., LLC**

By: _____
Name: _____
Its: _____

THE COMPANY:

**PIKNIK PRODUCTS COMPANY, INC.**

By: _____
Name: _____
Its: _____

ONYX000287

JUL 24 2003 15:52    3342418402    PAGE.12

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written:

PAC:

**PIKNIK ACQUISITION CORP., LLC**

By: _____
Name: _____
Its: _____

THE COMPANY:

PIKNIK PRODUCTS COMPANY, INC.

By: _____
Name: _MICHAEL O'CONNELL___
Its: _CEO_____

00000419