## GUARANTY

**THIS GUARANTY** (this "Agreement") made as of the 15th day of October, 2004, by **ONYX CAPITAL VENTURES, L.L.C.,** a Delaware limited liability company (the "Guarantor") in favor of **SOUTHTRUST BANK,** an Alabama banking corporation (the "Bank"). As used in this Agreement, except as otherwise defined herein or unless the context may clearly require to the contrary, all capitalized words and phrases shall have the meaning attributed to them in that certain Second Amended and Restated Credit Agreement dated November 5, 2001, between **PIKNIK PRODUCTS COMPANY, INC.,** an Alabama corporation (the "Borrower") and Bank, as amended by the following amendments between Borrower, **PIKNIK PROPERTIES COMPANY, INC.,** an Alabama corporation ("Properties"), **HERMAN R. ("RICKY") LOEB** ("HRL"), and **HERMAN LOEB, JR.,** an individual ("Loeb Jr.") (Borrower, Properties, HRL, and Loeb Jr. are sometimes referred to collectively herein as "Obligors") and Bank: Amendment and Forbearance Agreement dated April 10, 2002, Second Amendment and Amended Forbearance Agreement dated August 31, 2002, Third Amendment and Amended Forbearance Agreement dated January 31, 2003, Fourth Amendment and Amended Forbearance Agreement dated April 30, 2003, Fifth Amendment and Amended Forbearance Agreement dated July 23, 2003, Amendment to Credit Agreement dated February 13, 2004, Sixth Amendment and Amended Forbearance Agreement dated February 13, 2004, Second Amendment to Credit Agreement dated June 24, 2004, Seventh Amendment and Amended Forbearance Agreement dated June 24, 2004, and Eighth Amendment and Amended Forbearance Agreement dated of even date herewith between Obligors and Bank as the same may be amended or modified from time to time, the "Credit Agreement").

In consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor agrees, covenants and represents as follows:

1.A.     Guarantor hereby absolutely and unconditionally guarantees to Bank the due, regular and punctual payment and prompt performance of all Obligations, including payment of all Default costs. The Obligations specifically include all amounts due and owing under the Credit Agreement, the "Loans", the "Notes" and the other "Loan Documents" (as defined in that certain Eighth Amendment and Amended Forbearance Agreement of even date herewith between Obligors and Bank (the "Eighth Amendment")). Notwithstanding any contrary provision hereof or of any other Loan Document, the maximum cumulative liability of the Guarantor hereunder shall in all events be limited to the "Guaranteed Amount". As used herein, the term *"Guaranteed Amount"* shall mean an amount equal to the sum of (i) $1,700,000 (the "Guaranteed Principal Amount"), plus (ii) all interest at the Default Rate on the Guaranteed Principal Amount which accrues after a demand is made from Bank to Guarantor plus (iii) any fees and/or expenses incurred by Bank in connection with its efforts to collect the Guaranteed Amount from Guarantor. The Guaranteed Amount, or the remaining balance thereof at any time outstanding, will be determined without credit or offset for any amounts received by Bank from any other source, including direct payment by Borrower or any other guarantor of the Obligations, or through liquidation of any collateral now or hereafter given as security for the Obligations. The Guarantor will be credited with a payment against the Guaranteed Amount

PENGAD 800-631-6989

EXHIBIT

6

PIKNIK ONYX 02840

only if paid after the occurrence of an Event of Default and in response to a demand therefor by Lender.

      B.    This Guaranty is an unconditional guaranty, and Guarantor agrees that Bank, upon the occurrence of an Event of Default by Borrower under any Note, the Credit Agreement and/or any one or more of the other Loan Documents, shall not be required to assert any claim or cause of action against Borrower or any other party before asserting any claim or cause of action against Guarantor under this Agreement. Furthermore, Guarantor agrees that Bank shall not be required to pursue or foreclose on any collateral that it may receive from Borrower, Guarantor or others as security for any Obligations before making a claim or asserting a cause of action against Guarantor under this Agreement.

      C.    The failure of Bank to perfect any portion of its security interest in any Collateral as set forth in the Loan Documents or any other collateral now or hereafter securing all or any part of the Obligations, shall not release Guarantor from Guarantor's liabilities and obligations hereunder.

      D.    To the extent permitted by law: notice of acceptance of this Agreement and of any default by Borrower is hereby waived by Guarantor; presentment, protest, demand and notice of protest and demand of any and all collateral, and of the exercise of possessory remedies or foreclosure on any and all collateral received by Bank from Borrower or Guarantor are hereby waived; and all settlements, compromises, compositions, accounts stated and agreed balances in good faith between any primary or secondary obligors on any accounts received as collateral shall be binding upon Guarantor.

      E.    This Agreement shall not be affected, modified, or impaired by the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all of the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangements, composition with creditors or readjustment of, or other similar proceedings affecting Borrower, Guarantor or any other guarantor, or any of the assets belonging to one or more of them, nor shall this Agreement be affected, modified or impaired by the invalidity of any Note, the Credit Agreement, any of the other Loan Documents or any other document executed by Borrower or Guarantor in connection with the Loans.

      F.    Without notice to Guarantor, without the consent of Guarantor, and without affecting or limiting Guarantor's liability hereunder, Bank may:

          (a)    grant any Obligor extensions of time for payment of the Obligations or any part thereof;

          (b)    renew any of the Obligations;

          (c)    grant any Obligor extensions of time for performance of agreements or other indulgences;

          (d)    at any time release any or all of the collateral held by Bank as security for the obligations;

PIKNIK ONYX 02841

(e)     at any time release any other guarantor from such guarantor's guarantee of any of the Obligations;

(f)     compromise, settle, release, or terminate any or all of the obligations, covenants, or agreement of any Obligor under any Note, the Credit Agreement, and/or any one or more of the other Loan Documents; and

(g)     with Borrower's written consent, modify or amend any obligation, covenant or agreement of Borrower set forth in any Note, the Credit Agreement, and/or the other Loan Documents.

G.     This Agreement may not be terminated by Guarantor until such time as all Obligations, including any renewals or extensions thereof, have been paid and performed in full and such payments and performance of the Obligations have become final and are not subject to being refunded as a preference or fraudulent transfer under the Bankruptcy Law or other applicable Law.

2.     Guarantor represents and warrants to Bank and covenants that Guarantor has full power and unrestricted right to enter into this Agreement, to incur the obligations provided for herein, and to execute and deliver the same to Bank, and that when executed and delivered, this Agreement will constitute a valid and legally binding obligation of Guarantor, enforceable in accordance with its terms.   Guarantor acknowledges that Bank is relying upon Guarantor's covenants   herein in making the Loans to Borrower, and Guarantor undertakes to perform Guarantor's obligations hereunder promptly and in good faith.   Guarantor has received and reviewed a fully executed copy of the Eighth Amendment and hereby consents to the terms and conditions thereof and the transactions contemplated therein. Guarantor represents and warrants to SouthTrust that: (i) Guarantor is a limited liability company organized, validly existing and in good standing under the laws of the State of Delaware and the individual signing on behalf of Guarantor has full power and authority to execute, deliver and perform this Agreement and the other Loan Documents on behalf of Guarantor, and the same has been duly authorized pursuant to all requisite limited liability company action; (ii) this Agreement constitutes the valid and legally binding obligations of Guarantor, enforceable in accordance with its respective terms, except as enforceability may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally, and general principles of equity; (iii) the execution, delivery and performance by Guarantor of this Agreement, will not and did not, violate, conflict with, or constitute any default under any law (including laws relating to usury), government regulation, or any other agreement or instrument binding upon Guarantor; and (iv) no approval, authorization or other action by, or filing with, any governmental official, board or authority is required in connection with the execution and delivery of this Agreement or any of the other Loan Documents (including, but not limited to, the Amendment Documents), and the performance of the provisions thereof, except such approvals and authorizations as have been received, such actions as have been taken, and such filings as have been made.

3.     Guarantor covenants and agrees that so long as the Obligations are outstanding, Guarantor will from time to time upon request, furnish to Bank such information regarding the business affairs, finances and conditions of Guarantor and Guarantor's properties as may reasonably be required of Guarantor under the Credit Agreement.

PIKNIK ONYX 02842

4.     If Borrower is or shall hereafter be indebted to Bank for any obligations, liability or indebtedness other than the Obligations, and Bank should collect or receive any payments, funds or distributions, which are not specifically required, by law or agreement, to be applied to the Obligations, Bank may, in its sole discretion, apply such payments, funds or distributions to indebtedness of Borrower other than the Obligations.

5.     This Agreement shall be binding upon, and inure to the benefit of, Guarantor, Bank and their respective legal representatives, successors and assigns.

6.     The validity, interpretation, enforcement and effect of this Agreement shall be governed by, and construed according to the laws of, the State of Alabama. Guarantor consents that any legal action or proceeding arising hereunder may be brought, at the election of Bank, in the Circuit Court of Jefferson County, of the State of Alabama, or in the United States District Court for the Northern District of Alabama, Southern Division, and assents and submits to the personal jurisdiction of any such courts in any such action or proceeding.

7.     GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED HERETO OR THERETO OR CONTEMPLATED HEREBY OR THEREBY OR THE EXERCISE OF ANY RIGHTS AND REMEDIES HEREUNDER OR THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT BANK MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF GUARANTOR WITH BANK IRREVOCABLY TO WAIVE TRIAL BY JURY AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN THEM SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

8.     In the event that any provision hereof is deemed to be invalid by reason of the operation of any law or by reason of the interpretation placed thereon by any court, this Agreement shall be construed as not containing such provisions and the invalidity of such provisions shall not affect other provisions hereof which are otherwise lawful and valid and shall remain in full force and effect.

9.     Any notice or payment required hereunder or by reason of the application of any law shall be given and deemed delivered as provided in the Credit Agreement, except no payment shall be deemed received until the actual receipt thereof.

10.     The failure at any time or times hereafter to require strict performance by Guarantor of any of the provisions, warranties, terms and conditions contained herein or in any other agreement, document or instrument now or hereafter executed by Guarantor and delivered to Bank shall not waive, affect or diminish any right of Bank hereafter to demand strict compliance or performance therewith and with respect to any other provisions, warranties, terms

PIKNIK ONYX 02843

and conditions contained in such agreements, documents and instruments and any waiver of any default shall not waive or affect any other default, whether prior or subsequent thereto and whether of the same or a different type. None of the warranties, conditions, provisions and terms contained in this Agreement or in any agreement, document or instrument now or hereafter executed by Guarantor and delivered to Bank shall be deemed to have been waived by any act or knowledge of Bank, its agents, officers or employees, but only by an instrument in writing, signed by an officer of Bank, and directed to Guarantor specifying such waiver.

11.    The obligations of Guarantor under this Agreement will continue to be effective or be reinstated, as the case might be, if at any time any payment from Borrower of any sum due to Bank is rescinded or must otherwise be restored or returned to Bank on the insolvency, Bankruptcy, dissolution, liquidation or reorganization of Borrower or as a result of the appointment of a custodian, conservator, receiver, trustee or other officer with similar powers with respect to Borrower or any part of Borrower's property or otherwise. If an event permitting the acceleration of the maturity of the Loans has occurred and is continuing and such acceleration is at such time prevented by reason of the pendency against Borrower of a proceeding under any Bankruptcy Law, Guarantor agrees that, for the purposes of this Agreement and the obligations of Guarantor under this Agreement, the maturity of the Loans will be deemed to have been accelerated with the same effect as if Bank had accelerated the same in accordance with the terms of the Credit Agreement, the Notes, any of the other Loan Documents or any other document executed in connection with the Loan and Guarantor will immediately pay the unpaid balance of Loans.

12.    Guarantor will, on demand, reimburse Bank for all expenses incurred by Bank in connection with the preparation, administration, amendment, modification or enforcement of this Agreement, and if at any time hereafter Bank employs counsel to advise or provide other representation with respect to this Agreement or any other agreement, document or instrument heretofore, now or hereafter executed by Guarantor and delivered to Bank with respect to Borrower or the Obligations, or to commence, defend or intervene, file a petition, complaint, answer, motion or other pleadings or to take any other action in or with respect to any suit or proceeding relating to this Agreement or any other agreement, instrument or document heretofore, now or hereafter executed by Guarantor and delivered to Bank with respect to Borrower or the Obligations or to represent Bank in any litigation with respect to the affairs of Guarantor, or to enforce any rights of Bank or obligations of Guarantor or any other person, firm or corporation which may be obligated to Bank by virtue of this Agreement or any other agreement, document or instrument heretofore, now or hereafter delivered to Bank by or for the benefit of Guarantor with respect to Borrower or the Obligations, or to collect from Guarantor any amounts owing hereunder, then in any such event, all of the reasonable attorneys' fees incurred by Bank arising from such services and any expenses, costs and charges relating thereto shall constitute additional obligations of Guarantor payable on demand.

13.    Guarantor, as a material inducement to Bank to enter into the Amendment Documents, does hereby release, remise and forever discharge Bank and its affiliates, parents, divisions, subsidiaries, successors, predecessors, stockholders, officers, directors, agents, employees, attorneys, successors and assigns (Bank and such parties being collectively referred to herein as the "Released Parties") of and from any and all claims, liabilities, actions and causes of action, if any, of whatever kind or nature, whether known or unknown, those that

1289190 v3

5

PIKNIK ONYX 02844

are contingent, suspected, or unsuspected, and whether concealed or hidden, which have existed, arising out of or in any way connected with occurrences, acts, omissions, or transactions involving, directly or indirectly, the Credit Agreement, the Loan Documents or any of the Obligations, or any other transactions and dealings between the Bank and the Borrower.

14.     Guarantor does hereby waive any rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof as to any of the obligations created hereunder.

15.     This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both oral and written, between Guarantor and Bank with respect to the subject matter hereof.

1289190 v3

6

PIKNIK ONYX 02845

**IN WITNESS WHEREOF,** this instrument has been duly executed by Guarantor as of the day and year first above written.

> ONYX CAPITAL VENTURES, L.L.C., a
> Delaware limited liability company
>
> By: _____
> Print Name: _Jeffery Larry_
> Its: _Chairman and CEO?_

STATE OF _Ill_____ )
COUNTY OF _Cook_____ )

I, the undersigned Notary Public in and for said County, in said State, hereby certify that _JEFFERY LARRY_, whose name as _____ of Onyx Capital Ventures, L.L.C., a Delaware limited liability company, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said limited liability company.

Given under my hand and official seal, this _15_ day of _October_, 2004.

_____
Notary Public

My Commission Expires: _Dec-18-05_

> "OFFICIAL SEAL"
> RACHEL DYER
> Notary Public, State of Illinois
> My Commission Expires Dec. 18, 2005

PIKNIK ONYX 02846

**IN WITNESS WHEREOF,** this instrument has been duly executed by Guarantor as of the day and year first above written.

ONYX CAPITAL VENTURES, L.L.C., a Delaware limited liability company

By: _____

Print Name: Jeffery Larry

Its: Chairman and Chief Executive Officer

STATE OF Illinois )
COUNTY OF COOK )

    I, the undersigned Notary Public in and for said County, in said State, hereby certify that Jeffery Larry, whose name as Chairman and Chief Executive Officer of Onyx Capital Ventures, L.L.C., a Delaware limited liability company, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said limited liability company.

    Given under my hand and official seal, this 25th day of October, 2004.

_____
Notary Public

My Commission Expires: June 6, 2007

"OFFICIAL SEAL"
Kimberly Anne Koenig
Notary Public, State of Illinois
My Commission Exp. June 6, 2007

PIKNIK ONYX 02847

# STOCK POWER

FOR VALUE RECEIVED, **PIKNIK ACQUISITION CORP. LLC**, a Delaware limited liability company hereby sells, assigns and transfers unto _____, _____ (_____) Shares of the Common Stock, $____ par value per share, of **PIKNIK PRODUCTS COMPANY, INC.**, an Alabama corporation , standing in its name on the books of said corporation represented by Certificate No. ___ herewith, and does hereby irrevocably constitute and appoint Andy Raine or any Vice President of SouthTrust Bank as its attorney to transfer on the said books of said corporation with full power of substitution in the premises.

_____, 2004

**PIKNIK ACQUISITION CORP. LLC,** a Delaware limited liability company

By:  **ONYX CAPITAL VENTURES, L.L.C.,** a Delaware limited liability company its sole member

By: _____

Its: _____

In the presence of

1289187

## CERTIFICATE

I, Robert S. Lampert, do hereby certify as follows:

1.     That I am the Vice President of Finance of Piknik Products Company, Inc., a corporation created and existing under the laws of the State of Alabama (the "Company"), and that as such officer I have custody and control of the records of the Company and am personally familiar with those books and records and the organization and operations the Company.

2.     That Herman R. Loeb and Piknik Acquisition Corp., LLC, a Delaware limited liability company, are all of the shareholders of the Company.

3.     That Jeffery Larry, Herman R. Loeb, Michael F. O'Connell, Patrice Marie Daniels, and Kenneth R. Williams, Sr. are all of the members of the board of directors of the Company.

4.     That set forth below is the name and signature of the duly elected, qualified and acting Vice President of Finance of the Company.

| Name | Title | Signature |
|------|-------|-----------|
| Robert S. Lampert | Vice President of Finance | |

5.     That the Company is in good standing with the Secretary of State of the State of Alabama.

6.     That no suit or proceeding for the dissolution or liquidation of the Company which would effect the Agreement and Plan of Recapitalization dated October ___, 2004 or the transactions described therein (collectively, the "Plan of Recapitalization") has been instituted or is now threatened.

7.     That Exhibit A attached hereto is a true and correct copy of resolutions duly adopted by written consent of the shareholders and directors of the Company on or as of October 15, 2004; such action by the shareholder and directors was authorized by the Articles of Incorporation and Bylaws of the Company and such resolutions remain in full force and effect and have not been modified or amended.

8.     That the resolutions attached hereto as Exhibit A constitute all of the actions required to authorize the Plan of Recapitalization and the transactions contemplated in such resolution.

**PIKNIK ONYX 02893**

9.     That <u>Exhibit B</u> attached hereto is a true and correct copy of the Bylaws of the Company as in effect on the date hereof.

10.     That <u>Exhibit C</u> attached hereto is a true and correct copy of the Articles of Organization of the Company and those Articles of Organization have not been amended and remain in full force and effect

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Company, this 15th day of October, 2004.

(L.S.)

Robert S. Lampert

2

PIKNIK ONYX 02894

**EXHIBIT A**
**RESOLUTIONS**

3

PIKNIK ONYX 02895

## ACTION BY BOARD OF DIRECTORS AND SHAREHOLDERS WITHOUT A MEETING
## BY UNANIMOUS WRITTEN CONSENT OF ALL DIRECTORS AND SHAREHOLDERS IN LIEU OF SPECIAL MEETING HELD ON OCTOBER 14, 2004

As permitted by <u>Code of Alabama 1975</u>, sections 10-2B-8.21 and 10-2B-7.04, the undersigned, being all of the directors and shareholders of Piknik Products Company, Inc., an Alabama corporation (the "Corporation"), consent to the following action being taken by the board of directors and shareholders without a meeting, and agree that it is taken with like effect and validity as though it were duly taken by unanimous affirmative vote of all directors and shareholders at a special meeting of the directors and shareholders duly called and legally held on October 14, 2004, and direct that their unanimous written consent to the action taken be filed with the minutes of the proceedings of the board of directors shareholders of the Corporation.

1. In order to approve the plan of recapitalization of the Corporation, the following resolution is adopted:

"RESOLVED, That the form, terms, and provisions of, and the transactions contemplated by, the Agreement and Plan of Recapitalization, to be entered into by and among the Corporation, Herman R. Loeb, Herman Loeb, Jr., Piknik Acquisition Corp., LLC, a Delaware limited liability company, and Onyx Capital Ventures, LLC, a Delaware limited liability company substantially in the form attached hereto as Exhibit 'A' and reviewed by the board and shareholders, and any and all related agreements, including, but not limited to, the Eighth Amendment and Amended Forbearance Agreement and all exhibits thereto (the Agreement and Plan of Recapitalization Agreement and all related agreement are collectively referred to as the "Recapitalization Agreements"), with such changes therein and additions thereto (substantial or otherwise) as the officer or officers executing the Recapitalization Agreements may deem necessary, appropriate, or desirable on behalf of

PIKNIK ONYX 02896

and in the name of the Corporation be, and they hereby are, approved and adopted in all respects;

"RESOLVED, FURTHER, That the appropriate officer or officers of the Corporation be, and they hereby are, authorized to execute and deliver, on behalf of and in the name of the Corporation, the Recapitalization Agreements, substantially in the forms reviewed by the board and shareholders, with such changes therein and additions thereto (substantial or otherwise) as the officer or officers executing the Recapitalization Agreements may deem necessary, appropriate, or desirable, the execution thereof by such officer or officers constituting conclusive evidence of his or their authority to make such changes and to execute and deliver the Recapitalization Agreements;

"RESOLVED, FURTHER, That the Corporation and its officers are hereby authorized and directed to consummate the transactions contemplated by the Recapitalization Agreements, when and if executed, in accordance with their terms and conditions and to perform the obligations of the Corporation thereunder; and

"RESOLVED, FURTHER, That the officer or officers of the Corporation be, and each of them hereby is on behalf and in the name of the Corporation, authorized and directed to do and perform all such other acts and things and to execute and deliver all such other instruments, certificates, notices, and documents as may be necessary, appropriate, or desirable to effectuate the purposes of the foregoing resolutions and to pay all such costs and expenses as may be required by the terms of any of the foregoing documents."

    2.    In order to approve, confirm, and reaffirm all actions taken by the officers and directors of the Corporation in connection with the Recapitalization of the Corporation and the consummation of any and all transactions related thereto, the following resolution is adopted:

- 2 -

PIKNIK ONYX 02897

"RESOLVED, That all actions heretofore taken by any officer or director of the Corporation, on behalf and in the name of the Corporation, in connection with the transactions contemplated by the foregoing resolutions are hereby adopted, ratified, confirmed, and approved in all respects as acts and deeds of the Corporation."

3.    In order to amend the Articles of Incorporation of the Corporation, the following resolutions are adopted:

"RESOLVED, That the Articles of Amendment to the Articles of Incorporation of the Corporation, a copy of which is set forth in Exhibit 'B' attached hereto, is adopted and approved; and

"RESOLVED FURTHER, That the President is hereby authorized to file the Articles of Amendment to the Articles of Incorporation as required by Alabama law."

**[SIGNATURES APPEAR ON THE IMMEDIATELY FOLLOWING PAGE]**

- 3 -

PIKNIK ONYX 02898

_____
Jeffery Larry

_____
Herman R. Loeb

_____
Michael F. O'Connell

_____
Patrice Marie Daniels

_____
Kenneth R. Williams, Sr.

The Directors

_____
Herman R. Loeb


PIKNIK ACQUISITION CORP., LLC

By: _____
    Jeffery Larry
    Its Chief Executive Officer


The Shareholders

- 4 -

PIKNIK ONYX 02899

OCT 14 2004 7:05PM    ONYX CAPITAL VENTURESRSLC    3126124340                    P.2

_[signature]_

Jeffery Larry

_____

Herman R. Loeb

_____

Michael F. O'Connell

_____

Patrice Marie Daniels

_____

Kenneth R. Williams, Sr.

The Directors

_____

Herman R. Loeb

PIKNIK ACQUISITION CORP., LLC

By: _[signature]_____
    Jeffery Larry
    Its Chief Executive Officer

The Shareholders

- 4 -

PIKNIK ONYX 02900

Jeffery Larry
_____

Herman R. Loeb
_____

Michael F. O'Connell
_____

Patrice Marie Daniels
_____

Kenneth R. Williams, Sr.
_____

The Directors

Herman R. Loeb
_____

PIKNIK ACQUISITION CORP., LLC

By: _____

Jeffery Larry
Its Chief Executive Officer

The Shareholders

- 4 -

PIKNIK ONYX 02901

CAPELL HOWARD, P.C.    334 323 8354        10/14 '04 14:29 NO.530  05/08

_____

Jeffery Larry

_____

Herman R. Loeb

_____

Michael F. O'Connell

_____

Patrice Marie Daniels

_____

Kenneth R. Williams, Sr.

The Directors

_____

Herman R. Loeb

PIKNIK ACQUISITION CORP., LLC

By: _____
    Jeffery Larry
    Its Chief Executive Officer

The Shareholders

- 4 -

PIKNIK ONYX 02902

OCT-14-2004 18:36 FROM:K&J WILLIAMS        815-254-0868        TO:(334) 323-8888        P.002
      CAPELL HOWARD, P.C.    334 323 8354    10/14 '04 14:26 NO.530  05/08

_____

Jeffery Larry


_____

Herman R. Loeb


_____

Michael F. O'Connell


_____

Patrice Marie Daniels


_____

Kenneth R. Williams, Sr.

                    The Directors



_____

Herman R. Loeb


PIKNIK ACQUISITION CORP., LLC

By: _____

     Jeffery Larry
     Its Chief Executive Officer


                    The Shareholders



-4-

PIKNIK ONYX 02903

EXHIBIT "A"

AGREEMENT AND PLAN OF RECAPITALIZATION

PIKNIK ONYX 02904

## AGREEMENT AND PLAN OF RECAPITALIZATION

This Agreement and Plan Recapitalization is entered into by and among Piknik Products Company, Inc., an Alabama corporation (the "Company"), Herman R. Loeb ("Ricky"), Herman Loeb, Jr. ("Loeb, Jr."), Piknik Acquisition Corp. LLC, a Delaware limited liability company ("PAC"), and Onyx Capital Ventures, L.L.C., a Delaware limited liability company ("Onyx").

### Recitals

A.    PAC and Ricky are all of the shareholders of the Company, owning 510 and 490 shares, respectively, of the 1,000 outstanding shares of the Company.

B.    Onyx is the sole member of PAC.

C.    The Company is currently indebted to SouthTrust Bank, an Alabama banking corporation ("SouthTrust"), pursuant to (1) the Second Amended and Restated Revolving Note dated November ___, 2001 in the original principal amount of up to $5,000,000, which was increased to $7,000,000 as evidenced by the Note Modification Agreement dated February 13, 2004 (collectively, the "Revolving Credit Note"); (2) the Second Amended and Restated Term Note A dated November ___, 2001 in the original principal amount of $6,956,000 ("Term Note A"); (3) the Amended and Restated Term Note B dated November ___, 2001 in the original principal amount of $2,224,000 ("Term Note B"); (4) the Term Note C dated November ___, 2001 in the original principal amount of $2,500,000 ("Term Note C"); (5) the Promissory Note dated December 23, 2003 in the original principal amount of $1,300,000 (the "Kraft Note"); and (6) the Letter of Credit issued by SouthTrust dated June 16, 2000 in the original stated amount of $6,057,535 and the reimbursement agreement executed in connection therewith (collectively, the "Letter of Credit"). The Revolving Credit Note, Term Note A, Term Note B, Term Note C, and the Letter of Credit are collectively referred to as the "Company Notes."

PIKNIK ONYX 02905

D.    The Company Notes are subject to the terms of the Second Amended and Restated Credit Agreement dated November 5, 2001 (the "Credit Agreement").

E.    SouthTrust has agreed to permit and has permitted advances under the Revolving Credit Note in excess of the Borrowing Base (as defined in the Credit Agreement, as amended) of up to $1,000,000 (the "Overadvance Line").

F.    The Company Notes are personally guaranteed by Ricky as evidenced by the Amended and Restated Guaranty dated November ___, 2001 ("Ricky's Guaranty").

G.    The Company Notes and Ricky's Guaranty are secured by, among other things, a pledge of marketable securities (the "Pledged Securities") by Ricky and Loeb, Jr. as evidenced by (1) the Pledge and Security Agreement – Securities dated April 11, 2001; (2) the Pledge and Security Agreement – First Union Account dated April 11, 2001; and (3) the Pledge and Security Agreement dated November ___, 2001 (collectively, the "Pledge Agreement").

H.    The Company has a pipeline of potential business, the performance of which is being hindered by the Company's current balance sheet and debt structures.

I.    The Company, Ricky, Loeb, Jr., PAC, and Onyx desire to improve the Company's balance sheet by contributing additional capital to the Company and retiring a substantial part of the Company Notes as provided herein.

J.    SouthTrust is willing to provide additional financing for the Company to satisfy its liquidity requirements as provided herein.

In consideration of the matters described above, and of the mutual benefits and obligations set forth in this Agreement, the parties agree as follows:

**ARTICLE I**

**RECAPITALIZATION OF THE COMPANY**

The Company will be recapitalized according to the following plan:

2

PIKNIK ONYX 02906

1.    Ricky and Loeb, Jr. will form an Alabama limited liability company ("Loeb-Piknik, LLC"), with Ricky as the sole manager.

2.    Ricky will transfer his 490 shares of the Company stock and all of the Pledged Securities owned by him to Loeb-Piknik, LLC.

3.    Loeb, Jr. will transfer all of the Pledged Securities owned by him to Loeb-Piknik, LLC.

4.    Loeb-Piknik, LLC will sell and/or monetize 51% of the Pledged Securities (valued at approximately $4,100,000).[1]

5.    The Company will amend its Articles of Incorporation to authorize a total of 10,000 shares of common stock and to provide that, as long as SouthTrust has a pledge of the Company stock, no additional shares of the Company shall be issued without SouthTrust's consent.

6.    Loeb-Piknik, LLC will loan the proceeds from the sale and/or monetization of 51% of the Pledged Securities to PAC (the "PAC Loan"). PAC will contribute the PAC Loan proceeds to the Company in exchange for approximately 4,100 additional shares of the Company stock.

7.    The PAC Loan will be evidenced by a promissory note substantially in the form of the promissory note attached hereto as Exhibit A.

8.    The PAC Loan will be secured by a pledge to Loeb-Piknik, LLC of all of the Company stock owned by PAC (the "Piknik Stock Pledge") substantially in the form of the pledge and security agreement attached hereto as Exhibit B (the "Piknik Stock Pledge Agreement"). The Piknik Stock Pledge shall be junior and subordinated to the SouthTrust Stock Pledge (as defined in Article III below).

9.    Loeb-Piknik, LLC will contribute 49% of the Pledged Securities (valued at approximately $4,000,000) to the Company in exchange for approximately 4,000 additional shares of the Company stock, and the Company

---

[1] The value of the Pledged Securities will be determined when the Capital Contribution is made. Because of a recent decline in value of the stock of Dean Foods, one of the major positions in the Pledged Securities, the portfolio at the close of business on October 13 had a value of approximately $7.727 million. A 51% interest in the portfolio then had a value of approximately $3.94 million.

3

PIKNIK ONYX 02907

will sell those Pledged Securities. The PAC Loan proceeds contributed to the Company and the proceeds from the sale of Pledged Securities by the Company are referred to as the "Capital Contribution."

   10. The Company, Ricky, Loeb-Piknik, LLC, and PAC will amend the Piknik Products Company, Inc. Shareholders' Agreement dated July 25, 2003 (the "Shareholders' Agreement") as follows:

    (a) Loeb-Piknik, LLC will be substituted for Ricky as a party to the Shareholders' Agreement and will thereafter be entitled to all of his rights, benefits, and privileges and subject to all of his obligations under the Shareholders' Agreement and Ricky will thereafter be released from such obligations.

    (b) If Loeb-Piknik, LLC forecloses on some, but not all, of the Company stock under the Piknik Stock Pledge Agreement, the number of PAC Directors (as defined in the Shareholders' Agreement) will be reduced and the number of Loeb Directors (as defined in the Shareholders' Agreement) will be increased as further provided in the amendment to the Shareholders' Agreement.

    (c) The term "Option Period" will be defined as the period commencing on October 1, 2007, and ending on September 30, 2009.

    (d) The Piknik Stock Pledge and any transfer pursuant to the Piknik Stock Pledge Agreement will be included as a Permitted Transfer under Section 3.2 of the Shareholders' Agreement.

    (e) If Loeb-Piknik, LLC exercises its Call Right (as defined in the Shareholders' Agreement), (i) the Call Price (as defined in the Shareholders' Agreement) will be reduced by the outstanding principal, all accrued interest, and all other amounts due under the PAC Loan, and (ii) any and all amounts then or thereafter due or payable under the PAC Loan shall be considered paid in full.

    (f) Loeb-Piknik, LLC will not be entitled to exercise its Call Right unless and until Onyx is removed from the Onyx Guaranty (defined below).

    (g) Article VI of the Shareholders' Agreement dealing with corporate opportunities will be clarified to confirm that nothing contained in

4

PIKNIK ONYX 02908

Article VI is intended to, or will restrict, reduce, or eliminate the fiduciary duties of majority shareholders, directors, or officers under Alabama law.

(h)    Section 7.1 of the Shareholder's Agreement dealing with assignment of distributions will be revoked.

11.    The Company, Ricky, Loeb-Piknik, LLC, and PAC will amend the Put Agreement dated July 25, 2003 (the "Put Agreement") as follows:

(a) Loeb-Piknik, LLC will be substituted for Ricky as a party to the Put Agreement and will thereafter be entitled to all of his rights, benefits, and privileges and subject to all of his obligations under the Put Agreement and Ricky will thereafter be released from such obligations.

(b) Exhibit A to the Put Agreement will be amended to conform to the payment terms contained in Section 1(d) of the Put Agreement.

(c) If Loeb-Piknik, LLC or PAC exercises its Put Rights (as defined in the Put Agreement), the Company and the remaining shareholder shall use commercially reasonable efforts to have the selling shareholder released from all guaranties of Company debt.

12.    The Company, Ricky, Loeb-Piknik, LLC, and PAC will amend the Stock Purchase Agreement dated July 25, 2003 (the "Stock Purchase Agreement) as follows:

(a)    All    indemnification    will    be    eliminated    except indemnification for Losses (as defined in the Purchase Agreement) resulting from, arising out of or otherwise by virtue of (i) any breach of the Fundamental Representations (as defined in the Purchase Agreement) or (ii) fraud.

(b)    Section 8.5 dealing with set-off against the Promissory Note (as defined in the Stock Purchase Agreement) will be revoked.

13.    Loeb-Piknik, LLC's Call Right (as defined in the Shareholders' Agreement) and the PAC Put Right (as defined in the Put Agreement) will be subject and subordinated to the SouthTrust Stock Pledge (as defined in Article III below).

5

PIKNIK ONYX 02909

14.    The Company, Ricky, Loeb-Piknik, LLC, PAC, Loeb, Jr., and Onyx will execute and deliver such other documents as are customarily executed in connection with the transactions described above.

## ARTICLE II

### USE OF CAPITAL CONTRIBUTION

On or before October 22, 2004, the Capital Contribution will be made to an acceptable escrow agent and disbursed from escrow as follows:

1.    Term Note B and Term Note C will be fully satisfied.

2.    $2,000,000 of the Capital Contribution will be used as payment on the Revolving Credit Note.

3.    The remaining Capital Contribution will be applied to Term Note A.

## ARTICLE III

### ACTIONS TO BE TAKEN BY ONYX AND PAC

On or before October 15, 2004, Onyx will guaranty the Company Notes by executing a guaranty substantially in the form of the guaranty attached hereto as Exhibit C (the "Onyx Guaranty"), and PAC will pledge to SouthTrust of all of the Company stock owned by PAC by executing a pledge and security agreement substantially in the form of the pledge and security agreement attached hereto as Exhibit D (the "SouthTrust Stock Pledge).

## ARTICLE IV

### CONDITIONS PRECEDENT

The parties' obligations contained herein are conditioned on the receipt, on or before October 15, 2004, of a fully executed loan modification agreement, which provides as follows:

6

PIKNIK ONYX 02910

1.    The Overadvance Line is increased to $3,000,000 until October 22, 2004 and advances under the Overadvance Line will be fully allowed.

2.    Provided that the payments are made as provided in Article II, the $3,000,000 Overadvance Line and the Forbearance Period (as defined in the Seventh Amendment and Amended Forbearance Agreement dated June 24, 2004) are extended until March 31, 2005.

3.    Effective upon the payments on the Company Notes as provided in Article II, SouthTrust's security interest in the Pledged Securities will be immediately released.

4.    Failure to make the payments as provided in Article II will constitute a default under the Company Notes and, in such event, no further advance will be allowed under the Revolving Credit Note.

5.    At the end of the Forbearance Period, or at an earlier date if the Company's balance sheet justifies such action, SouthTrust will reassess the Company Notes and the Kraft Note to provide a more stable debt structure and eliminate all defaults.

6.    The maximum cumulative liability of Ricky under the Guaranty shall in all events be limited to the "Guaranteed Amount". As used herein, the term "Guaranteed Amount" shall mean an amount equal to the sum of (i) the outstanding principal balance of the Obligations (as defined in the Credit Agreement) at the time demand for payment is made against Ricky less $1,700,000, plus (ii) all interest on the outstanding indebtedness evidenced by the Notes (as defined in the Credit Agreement) (whether accrued before or after a demand for payment is made by SouthTrust) plus (iii) any additional or protective advances made pursuant to the Loan Documents (as defined in the Credit Agreement) after a demand for payment is made by SouthTrust plus (iv) any fees and/or expenses incurred by SouthTrust in connection with exercising its rights and/or remedies under the Loan Documents (as defined in the Credit Agreement).

7

PIKNIK ONYX 02911

## ARTICLE V

## <u>EXECUTION</u>

The parties have executed this Agreement as of October ___, 2004.

**[SIGNATURES APPEAR ON THE IMMEDIATELY FOLLOWING PAGE]**

8

PIKNIK ONYX 02912

PIKNIK PRODUCTS COMPANY, INC.


By:_____

_____
Its: _____

The Company

ONYX CAPITAL VENTURES, L.L.C.


By:_____

_____
Its: _____

Onyx


PIKNIK ACQUISITION CORP., LLC


By:_____

_____
Its:_____

PAC


_____
Herman R. Loeb

Ricky


_____
Herman Loeb, Jr.

Loeb, Jr.


9

PIKNIK ONYX 02913

EXHIBIT "B"

ARTICLES OF AMENDMENT
TO THE
ARTICLES OF INCORPORATION
OF
PIKNIK PRODUCTS COMPANY, INC.
(an Alabama corporation)

Pursuant to the provisions of <u>Code of Alabama 1975</u>, sections 10-2B-10.03 and 10-2B-10.06, Piknik Products Company, Inc., an Alabama corporation (the "Corporation"), adopts the following Articles of Amendment to its Articles of Incorporation:

1.     **Name of Corporation**.  The present name of the Corporation is Piknik Products Company, Inc.

2.     **Text of Amendment Adopted**.  Article II of the Articles of Incorporation, as amended, is revoked in its entirety and the following Article II is substituted therefor:

"ARTICLE II.

AUTHORIZED SHARES

The total amount of the authorized stock of the Corporation is 10,000 shares of common stock having a par value of $1.00 each.  All of the authorized stock is common stock and none is preferred stock or stock of a different class.  As long as the Pledge and Security Agreement between Piknik Acquisition Corp., LLC, a Delaware limited liability company, and SouthTrust Bank, an Alabama banking corporation ("SouthTrust"), dated October __, 2004, is in effect, (a) no additional share may be issued without SouthTrust's written consent and (b) this Article may not be amended without SouthTrust's written consent."

3.     **Effect upon Issued Shares**.  The Amendment does not provide for an exchange, reclassification or cancellation of issued shares.

- 6 -

PIKNIK ONYX 02914

4.   **Date of Adoption of Amendment**.   The Amendment was adopted by the board of directors and the shareholders of the Corporation by the unanimous written consent of the directors and the shareholders in lieu of a meeting held on October ___, 2004.

5.   **Shareholder Approval**.   The number of shares of the Corporation outstanding at the time of the adoption of the Amendment was 1,000 and the number of shares entitled to vote thereon was 1,000.   No share was voted against the Amendment.

Dated:  October ___, 2004.

PIKNIK PRODUCTS COMPANY, INC.

By:  _____
          Robert S. Lampert
          Its Vice President of Finance

- 7 -

PIKNIK ONYX 02915

**EXHIBIT B**
**BYLAWS**

4

PIKNIK ONYX 02916

AMENDED AND RESTATED
BYLAWS

OF

PIKNIK PRODUCTS COMPANY, INC.
(an Alabama Corporation)

July 2003

PIKNIK ONYX 02917

## PIKNIK PRODUCTS COMPANY, INC.

- - - - - - - -

### AMENDED AND RESTATED BYLAWS

### JULY 2003

- - - - - - - -

These Amended and Restated Bylaws of Piknik Products Company, Inc. (the "Corporation") are adopted in accordance with the provisions of the Alabama Business Corporation Act, as amended (the "Act') and the Corporation's Articles of Incorporation. In the event of an irreconcilable conflict between the Act or the Articles of Incorporation and these Bylaws, the pertinent provision of the Act or the Articles of Incorporation will control.

## ARTICLE I.

## LOCATION OF CORPORATION OFFICES

Section 1.01. **Principal Office.** The initial principal offices of the Corporation will be located in Montgomery, Alabama.

Section 1.02. **Other Offices.** The Corporation may also have offices at other places within and without Alabama from time to time and may relocate its principal offices if deemed advisable by the Corporation.

## ARTICLE II.

## SHAREHOLDERS MEETINGS

Section 2.01. **Annual Meeting.** The annual meeting of the shareholders of the Corporation for the election of directors and for the transaction of any other business that may properly come before the meeting shall be held each year as soon as reasonably practicable after delivery to the shareholders of the financial statements of the Corporation for the prior year.

PIKNIK ONYX 02918

Section 2.02. <u>Notice of Annual Meeting</u>. Notice of the date, time, and place of any annual meeting of the shareholders of the Corporation shall be given in writing, personally or by mail, by the Corporation to each shareholder entitled to vote at the meeting no fewer than 10 nor more than 60 days before the meeting date. If one of the purposes of the annual meeting is to consider an increase of the stock or bonded indebtedness of the Corporation, notice of the meeting shall be given in the manner prescribed in this Section not less than 30 nor more than 60 days before the meeting.

Section 2.03. <u>Special Meeting</u>.

(a)     The Corporation shall hold a special meeting of its shareholders:

(1)     On call of the Board of Directors or the president;

(2)     If the holders of at least 10 percent of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting sign, date, and deliver to the president or secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held, who shall, within 21 days of the receipt of such demand, cause notice to be given of the meeting to be held within the minimum time following the notice prescribed by Section 2.04; or

(3)     On call of the holders of at least 10 percent of the votes entitled to be cast at the proposed special meeting who signed a demand for a special meeting valid under Section 2.03(a)(2), if:

(i)     Notice of the special meeting was not given within 21 days after the date the demand was delivered to the president or secretary or

(ii)     The special meeting was not held in accordance with the notice.

(b)     If not otherwise fixed under <u>Code of Alabama 1975</u>, section 10-2B-7.03 or 10-2B-7.07, the record date for determining shareholders entitled to demand a special meeting is the date the first shareholder signs the demand.

-2-

PIKNIK ONYX 02919

(c)    Only business within the purpose or purposes described in the meeting notice may be conducted at a special shareholders' meeting.

Section 2.04. <u>Notice of Special Meeting</u>. Notice of any special meeting of the shareholders of the Corporation shall be given in writing, personally or by mail, by the Corporation or, in the case of a special meeting called pursuant to Section 2.03(a)(3), the person(s) calling the meeting to each shareholder entitled to vote at the meeting no fewer than 10 nor more than 60 days before the meeting. The notice shall state the date, time and place of the meeting and shall also state the purpose, or purposes, for which the meeting is called. If the purpose of the special meeting is to increase the stock or bonded indebtedness of the Corporation, no fewer than 30 days' notice of the meeting shall be given in the manner prescribed in this Section.

Section 2.05. <u>Delivery of Notice to Shareholders</u>. Any notice to the shareholders of the Corporation shall be in writing and will be deemed to have been duly given if: (a) personally delivered; (b) mailed via the United States Postal Service, first class postage prepaid, at the shareholder's address as it appears on the stock transfer books of the Corporation; (c) delivered via a recognized, reputable express courier (such as Federal Express); or (d) electronically transmitted by telecopier or other facsimile device to the shareholder's then serviceable facsimile device located at the shareholder's address as it appears on the stock transfer books of the Corporation or to the shareholder's published telephone number for such device. All notices will be deemed to have been given as follows: personal delivery - date of receipt; mail -the date of deposit with the United States Postal Service, as evidenced by the postmark, if mailed postpaid and correctly addressed; express courier - the next national banking business day after deposit with the express courier; and facsimile device - date of transmission.

-3-

PIKNIK ONYX 02920

**Section 2.06.  Waiver of Notice.**

(a)    A shareholder may waive any notice before or after the date and time stated in the notice.  The waiver must be in writing, signed by the shareholder entitled to the notice, and delivered to the Corporation for inclusion in the minutes or filing with the corporate records.

(b)    A shareholder's attendance at a meeting:

(1)    Waives objection to lack of notice or defective notice of the meeting, unless the shareholder at the beginning of the meeting objects to holding the meeting or transacting business at the meeting; and

(2)    Waives objection to consideration of a particular matter at the meeting that is not within the purpose or purposes described in the meeting notice, unless the shareholder objects to considering the matter before action is taken on the matter.

**Section 2.07.  Place of Meetings.**    All annual and special meetings of the shareholders shall be held at the principal office of the Corporation, or at any other place or places within or without Alabama, that may be designated by the shareholders.

**Section 2.08.  Action without Meeting.**

(a)    Except as otherwise provided in the Articles of Incorporation, any action required or permitted to be taken at a meeting of the shareholders may be taken without a meeting if the action is taken by all shareholders entitled to vote on the action.  The action must be evidenced by one or more written consents describing the action taken, signed by all of the shareholders entitled to vote on the action, and delivered to the Corporation for inclusion in the minutes or filing with the Corporation's records.

(b)    If not otherwise fixed by the Articles of Incorporation, these Bylaws, or judicial decree, the record date for determining shareholders entitled to take action without a meeting is the date the first shareholder signs the consent.  A consent signed by all of the

PIKNIK ONYX 02921

shareholders shall have the same effect as a meeting vote of the shareholders and may be described as such in any document.

(c)    If the Act requires that notice of a proposed action be given to nonvoting shareholders and the action is to be taken by the unanimous consent of the voting shareholders, the nonvoting shareholders will be given written notice of the proposed action at least 10 days before the action is taken. The notice will contain or be accompanied by the same material that, under the Act, would have been required to be sent to nonvoting shareholders in a notice of a meeting at which the proposed action would have been submitted to the shareholders for action.

Section 2.09.    Quorum and Voting Requirements for Voting Groups.

(a)    Shares entitled to vote as a separate voting group may take action on a matter at a meeting only if a quorum of those shares exists with respect to that matter. Unless the Articles of Incorporation or the Act provide otherwise, a majority of the votes entitled to be cast on the matter by the voting group constitutes a quorum of that voting group for action on that matter.

(b)    Once a share is represented for any purpose at the meeting, it is, unless established to the contrary, presumed present for quorum purposes for the remainder of the meeting. If a quorum is present when a vote is taken, action on a matter (other than the election of directors) by a voting group is approved if the votes cast within the voting group favoring the action exceed the votes cast opposing the action.

(c)    If less than a quorum of the shareholders is present or represented by proxy at any meeting, a majority of those present or represented may, after the lapse of at least half an hour, adjourn the meeting to a future time not less than 7 days nor more than 30 days

-5-

PIKNIK ONYX 02922

later. The Corporation shall give at least 5 days' notice by certified mail to the holder of each share entitled to vote who was absent from the meeting.

(d)    For purposes of these Bylaws, "voting group" means all shares of one or more classes or series that under the Articles of Incorporation or the Act are entitled to vote and be counted together collectively on a matter at a meeting of the shareholders. All shares entitled by the Articles of Incorporation or the Act to vote generally on the matter will be considered for that purpose a single voting group.

Section 2.10. **Voting.** Each shareholder of the Corporation shall be entitled to one vote, in person or by proxy, for each share of stock standing in the name of such shareholder on the books of the Corporation. No voting of treasury shares shall be allowed. No shares of stock shall be voted at any meeting of shareholders or counted in determining the total number of outstanding shares at any given time if the consideration for those shares has not been fully paid to the Corporation.

Section 2.11. **Proxies.**

(a)    A shareholder may vote his shares in person or by proxy.

(b)    A shareholder may appoint a proxy to vote or otherwise act for him by signing an appointment form, either personally or by his attorney-in-fact.

(c)    An appointment of a proxy is effective when received by the secretary or other officer or agent of the Corporation authorized to tabulate votes. An appointment is valid for 11 months unless a longer or shorter period is expressly provided in the appointment form.

(d)    An appointment of a proxy is revocable by the shareholder unless the appointment form conspicuously states that it is irrevocable and the appointment is coupled with an interest. Appointments coupled with an interest include the appointment of:

-6-

PIKNIK ONYX 02923

(1)    A pledgee;

(2)    A person who purchased or agreed to purchase the shares;

(3)    A creditor of the Corporation who extended it credit under terms requiring the appointment;

(4)    An employee of the Corporation whose employment contract requires the appointment; or

(5)    A party to a voting agreement among two or more shareholders of the Corporation.

(e)    The Corporation may accept and rely upon a proxy's authority unless notice of the revocation, death, or incapacity of the shareholder appointing the proxy is received by the secretary or other officer or agent of the Corporation authorized to tabulate votes before the proxy exercises his authority under the appointment.

(f)    An irrevocable appointment coupled with an interest is revoked when the interest with which it is coupled is extinguished.

Section 2.12. <u>Record Dates</u>.  For the purpose of determining the shareholders entitled to notice of a meeting, to demand a special meeting, to vote, or to take any other action, the Board of Directors may fix a future date as the record date for any such determination of shareholders.  The date in any case may not be more than 70 days before the meeting or action requiring the determination of shareholders.  If no record date is fixed for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders, the date on which notice of the meeting is mailed shall be the record date for such determination of shareholders.  When a determination of shareholders entitled to vote at any meeting of shareholders has been made as provided in this Section, such determination shall apply to any adjournment thereof, unless the Board of Directors fixes a new record date which must be done if the meeting is adjourned to a date more than 120 days after the date fixed for the original meeting.

-7-

PIKNIK ONYX 02924

**Section 2.13.  List of Shareholders Entitled to Vote.**

(a)    After a record date for a meeting has been fixed, an alphabetical list of the shareholders entitled to vote at the meeting, arranged by voting group, and showing the address and the number of shares held by each shareholder will be prepared.

(b)    This list will be available for inspection on written demand by any shareholder beginning two business days after notice of such meeting is given and continuing through the meeting and any adjournment thereof, during regular business hours for any purpose germane to the meeting.  The shareholder list will be available for inspection at the Corporation's principal office or, if the Corporation's principal office is located outside of Alabama, at the Corporation's registered office.

**Section 2.14.  Order of Business at Meetings.**  The order of business at annual meetings, and so far as practicable at all other meetings of shareholders, shall be as follows:

(a)    Proof of due notice of meeting or waiver thereof;

(b)    Call of roll and examination of proxies;

(c)    Reading and disposal of any unapproved minutes;

(d)    Presentation of annual reports of officers and committees;

(e)    Completion of unfinished business;

(f)    Consideration of new business;

(g)    Election of directors; and

(h)    Adjournment of meeting.

-8-

PIKNIK ONYX 02925

## ARTICLE III.

## DIRECTORS

Section 3.01. <u>Number, qualification, and Election</u>. The business, affairs, and property of the Corporation shall be managed by a Board of Directors consisting of five members. The Board of Directors will be elected at each annual meeting of the shareholders by a majority of the votes cast at the election by ballot or, in absence of objection by or on behalf of any shareholder present or represented at the meeting, in any manner other than by ballot. The number of directors serving on the Board shall be decreased or increased only by vote of a majority of a quorum of the issued and outstanding shares entitled to vote on the election of directors at an annual or special meeting called for that purpose. Directors shall hold office until their respective successors are elected and qualified or there is a decrease in the number of directors. Directors must be natural persons of at least 19 years of age, but do not have to be shareholders of the Corporation or residents of Alabama, unless the Articles of Incorporation so require.

Section 3.02. <u>Resignation of Directors</u>. A director may resign at any time by delivering written notice to the Board of Directors, its Chairman, or to the Corporation. The resignation is effective when the notice is delivered unless the notice specifies a later effective date.

Section 3.03. <u>Removal of Directors by Shareholders</u>.

(a)     The Shareholders may remove one or more directors with or without cause unless the Articles of Incorporation provide that directors may be removed only for cause.

(b)     If a director is elected by a voting group of shareholders, only the shareholders of that voting group may participate in the vote to remove him.

-9-

PIKNIK ONYX 02926

(c)   If cumulative voting on the election of directors is required by the Articles of Incorporation, a director may not be removed if the number of votes sufficient to elect him under cumulative voting is voted against his removal. If cumulative voting is not required, a director may be removed only if the number of votes cast to remove him exceeds the number of votes cast not to remove him.

(d)   A director may be removed by the shareholders only at a meeting called for the purpose of removing him and the meeting notice must state that the purpose or one of the purposes, of the meeting is the removal of the director.

**Section 3.04. <u>Vacancy on Board</u>.**

(a)   Unless the Articles of Incorporation provide otherwise, if a vacancy occurs on a Board of Directors:

(1)   The shareholders may fill the vacancy, whether resulting from an increase in the number of directors or otherwise;

(2)   The Board of Directors may fill the vacancy, except that the directors shall have the power to fill a vacancy resulting from an increase in the number of directors only if expressly provided for in the Articles of Incorporation; or

(3)   If the directors remaining in office constitute fewer than a quorum of the Board, they may fill the vacancy, if it is one that the directors are authorized to fill, by the affirmative vote of a majority of all the directors remaining in office.

(b)   If the vacant office was held by a director elected by a voting group of shareholders, only the holders of shares of that voting group are entitled to vote to fill the vacancy if it is filled by the shareholders.

(c)   A vacancy that will occur at a specific later date may be filled before the vacancy occurs but the new director may not take office until the vacancy occurs.

-10-

PIKNIK ONYX 02927

Section 3.05. <u>Regular Meetings</u>. Regular meetings of the Board of Directors may be held at such times as determined by the Board of Directors. No notice will be required of regular meetings of the Board of Directors.

Section 3.06. <u>Special Meetings</u>. Special meetings of the Board of Directors may be called at any time by the president or by any two members of the Board of Directors. Notice of any special meeting of the Board of Directors, shall be given in writing to each director not less than two days before the meeting. The notice shall state the date, time, and place of the meeting. Unless required by the Articles of Incorporation, the notice need not state the purpose of the meeting.

Section 3.07. <u>Delivery of Notice to Directors</u>. Any notice to the directors of the Corporation will be in writing and will be deemed to have been duly given if: (a) personally delivered; (b) mailed via the United States Postal Service, first class postage prepaid, at the director's address as it appears on the records of the Corporation; (c) delivered via a recognized, reputable express courier (such as Federal Express); or (d) electronically transmitted by telecopier or other facsimile device to the director's then serviceable facsimile device located at the director's address as it appears on the records of the Corporation or to the director's published telephone number for such device. All notices will be deemed to have been given as follows: personal delivery - date of receipt; mail - date of deposit with the United States Postal Service, as evidenced by the postmark, if mailed postpaid and correctly addressed; express courier -the next national banking business day after deposit with the express courier; and facsimile device - date of transmission.

-11-

PIKNIK ONYX 02928

Section 3.08. <u>Waiver of Notice</u>.

(a)     A director may waive any notice before or after the date and time stated in the notice. The waiver must be in writing, be signed by the director entitled to the notice, and be delivered to the Corporation for inclusion in the minutes or filing with the corporate records.

(b)     A director's attendance at a meeting:

(1)     Waives objection to lack of notice or defective notice of the meeting, unless the director at the beginning of the meeting objects to holding the meeting or transacting business at the meeting; and

(2)     Waives objection to consideration of a particular matter at the meeting that is not within the purpose or purposes described in the meeting notice, unless the director objects to considering the matter before action is taken on the matter.

Section 3.09. <u>Action without Meeting</u>.

(a)     Unless the Articles of Incorporation provide otherwise, any action by the Board of Directors may be taken without a meeting if the action is taken by all members of the Board. The action must be evidenced by one or more written consents describing the action taken, signed by each director, and included in the minutes or filed with the corporate records reflecting the action taken.

(b)     An action taken under this Section is effective when the last director signs the consent, unless the consent specifies a different effective date.

(c)     A consent signed under this Section has the effect of a meeting vote and may be described as such in any document.

Section 3.10. <u>Telephonic Meetings</u>.     Unless the Articles of Incorporation provide otherwise, the Board of Directors may permit any or all directors to participate in a regular or special meeting by, or conduct the meeting through the use of, any means of communication by which all directors participating may simultaneously hear each other during

-12-

PIKNIK ONYX 02929

the meeting. A director participating in a meeting by this means is deemed to be present in person at the meeting.

### Section 3.11. Quorum and Voting.

(a)    Unless the Articles of Incorporation require a greater or lesser number, a quorum of the Board of Directors consists of:

(1)    A majority of the fixed number of directors if the size of the Board is fixed by the Articles of Incorporation or these Bylaws; or

(2)    A majority of the fixed number of directors prescribed, or if no number is prescribed, the number in office immediately before the meeting begins, if the corporation has a variable-range size board.

(b)    At all meetings of the Board of Directors, each director will have one vote.

(c)    If a quorum is present when a vote is taken, the affirmative vote of a majority of directors present is the act of the Board of Directors unless the Articles of Incorporation or these Bylaws require the vote of a greater number of directors. A director is, unless established to the contrary, presumed present for quorum purposes for the remainder of a meeting at which he has been present for any purpose.

(d)    A director who is present at a meeting of the Board of Directors or a committee of the Board of Directors when corporate action is taken is deemed to have assented to the action taken unless: (1) he objects at the beginning of the meeting (or promptly upon his arrival) to holding it or transacting business at the meeting or, as to a matter required under the Articles of Incorporation or these Bylaws to be included in the notice of the purpose of the meeting, he objects before action is taken on the matter; (2) his dissent or abstention from action taken is entered in the minutes of the meeting; or (3) he delivers written notice of his dissent or abstention to the presiding officer of the meeting before its adjournment or to the Corporation

-13-

PIKNIK ONYX 02930

immediately after adjournment of the meeting. A director who votes in favor of the action taken may not later dissent or abstain.

Section 3.12. Compensation. Unless the Articles of Incorporation provide otherwise, directors may fix the compensation to be paid for their services as directors. A director may also serve the Corporation in any other capacity as an officer, agent, or otherwise, and receive additional compensation for that service.

Section 3.13. Contracts. No fair and reasonable contract or other transaction between the Corporation and any other person shall be affected by the fact that any director or officer of the Corporation is a principal of the other person, if that fact shall be disclosed or known to the Board of Directors, and the contract or transaction shall be approved or ratified by the affirmative vote of a majority of the disinterested directors present at a meeting of the Board of Directors or the committee of the Corporation having authority in the premises or is approved or ratified by a majority of the shareholders, all as provided by Alabama corporate law.

Section 3.14. Committees.

Unless the Articles of Incorporation provide otherwise, the Board of Directors may create one or more committees and appoint members of the Board of Directors to serve on them. Each committee may have one or more members, who serve at the pleasure of the Board of Directors. The creation of a committee and appointment of members to it must be approved by the greater of (1) a majority of all the directors in office when the action is taken or (2) the number of directors required by the Articles of Incorporation or these Bylaws to take action under Section 3.11. Sections 3.05 through 3.11, which govern meetings, action without meetings, notice and waiver of notice, and quorum and voting requirements of the Board of Directors, apply to committees and their members as well.

-14-

PIKNIK ONYX 02931

Each committee may exercise the authority of the Board of Directors, to the extent specified by the Board of Directors or in the Articles of Incorporation or these Bylaws. A committee may not however:

(1)     Authorize distributions;

(2)     Approve or propose to shareholders action required to be approved by shareholders;

(3)     Fill vacancies on the Board of Directors or on any of its committees;

(4)     Amend the Articles of Incorporation;

(5)     Adopt, amend, or repeal these Bylaws;

(6)     Approve a plan of merger not requiring shareholder approval;

(7)     Authorize or approve reacquisition of shares, except according to a formula or method prescribed by the Board of Directors; or

(8)     Authorize or approve the issuance or sale or contract for sale of shares, or determine the designation and relative rights, preferences, and limitations of a class or series of shares, except that the Board of Directors may authorize a committee (or a senior executive officer of the corporation) to do so within limits specifically prescribed by the Board of Directors.

## ARTICLE IV.

### OFFICERS

Section 4.01. <u>Appointment</u>. The Board of Directors shall appoint a president, a secretary, and any additional officers which the Corporation from time to time may need, none of whom need be directors. Any two or more offices may be held by one person. Each officer shall hold office following their appointment until his resignation or removal. The appointment of an officer does not create or provide any contract rights in or to the officer.

-15-

PIKNIK ONYX 02932

Section 4.02. <u>Resignation and Removal</u>.

(a)     An officer may resign at any time by giving notice to the Corporation. A resignation is effective when the notice is given, unless the notice specifies a later effective date. If a resignation is made effective at a later date and the Corporation accepts the future effective date, the Board of Directors may fill the pending vacancy before the effective date if the Board of Directors provides that the successor does not take office until the effective date.

(b)     Subject to any employment rights provided an officer by express agreement with the Corporation or by law, the Board of Directors may remove any officer at any time with or without cause.

Section 4.03. <u>Powers and Duties of the Chairman of the Board</u>. The Board of Directors may appoint a Chairman of the Board from among the directors. If the appointment is made, the Chairman of the Board shall preside at all meetings of the Board of Directors, if present, and shall, in general, perform any other duties that may be assigned to him by the Board of Directors.

Section 4.04. <u>Powers and Duties of the Vice Chairman of the Board</u>. The Board of Directors may appoint a Vice Chairman of the Board from among the directors. If the appointment is made, the Vice Chairman of the Board shall perform those duties that may be assigned to him by the Board of Directors. In the event of the death, resignation, absence or inability to act of the Chairman of the Board, the Vice Chairman of the Board shall assume and discharge pro tempore the powers and duties of the Chairman of the Board.

Section 4.05. <u>Powers and Duties of the President</u>. The president shall be the chief executive officer of the Corporation and shall have general and active management of the business of the Corporation and shall see that all orders and resolutions of the Board of Directors

-16-

PIKNIK ONYX 02933

are carried into effect. It shall be the duty of the president, in the absence of the Chairman of the Board, to preside at shareholders' meetings and at all meetings of the Board of Directors. The president shall cause to be called special meetings of the shareholders and directors, in accordance with these Bylaws. The president, subject to the approval of the Board of Directors, shall appoint and remove, employ and discharge, and determine the compensation of all agents and employees of the Corporation other than officers appointed by the Board. The president shall see that the books, reports, statements, and certificates required by law are properly kept, made, and filed according to law. The president or his designee shall submit a report of the operations of the Corporation for each year to the Board, at a regular meeting or special meeting called for that purpose, and to the shareholders at their annual meeting. From time to time, the president shall report to the directors all matters within his knowledge which the interests of the Corporation may require to be brought to their attention. In general, he shall perform all the duties incident to his office.

Section 4.06. **Powers and Duties of Vice Presidents.** The vice president(s) of the Corporation, if any, shall generally assist the president and shall perform those duties that may be assigned to him by the Board of Directors. In the event of the death, resignation, absence or inability to act of the president, the vice president, or if there shall be more than one, the vice presidents in the order determined by the Board of Directors, shall assume and discharge pro tempore the powers and duties of the president of the Corporation.

Section 4.07. **Powers and Duties of Secretary.** The secretary shall be ex officio secretary of the Board of Directors and shareholders. He shall keep the minutes of all meetings of the Board of Directors and shareholders. He shall have charge of the corporate books and records. He shall be authorized to sign certificates of stock with the president. He shall keep

-17-

PIKNIK ONYX 02934

accounts of stock registered and transferred in the manner prescribed by law, and in the absence of an independent transfer agent or registrar, he shall perform the functions prescribed for those agents. He shall give and serve all notices to the shareholders and directors required to be given by the Corporation. In general, he shall perform all the duties incident to his office and, in the absence of a treasurer, all duties incident to that office.

Section 4.08. <u>Powers and Duties of Treasurer</u>.  The treasurer shall have the care and custody of and be responsible for all the funds, securities, evidences of indebtedness and other valuable documents of the Corporation. He shall deposit all funds in the name of the Corporation in those banks, or trust companies, or other depositories, or in the safe deposit vaults that the Board of Directors may designate.  The treasurer shall render a statement of the condition of the finances of the Corporation at any meeting of the Board of Directors which the Board shall request, and at any other times as shall be required of him, and a full financial report at the annual meeting of the shareholders.  The treasurer shall keep at the principal business office of the Corporation full and accurate books of account of all its business and transactions and any other books of account which the Board of Directors may require.  He will exhibit the books to any director of the Corporation upon the request of the director.  In general, he shall perform all the duties incident to his office.

Section 4.09. <u>Assistant Officers</u>.  The Board of Directors may appoint an assistant to any officer. An assistant officer shall exercise the duties of that office in the absence of the officer whom he was appointed to assist.

Section 4.10. <u>Returns and Statements</u>.  It shall be the duty of each officer of the Corporation to make and file any and all returns, reports, lists, or statements required by law to

-18-

PIKNIK ONYX 02935

be made and filed by him, and to make full report to the Board of Directors respecting the affairs of the Corporation in his charge whenever he may be requested to do so.

Section 4.11. Compensation.     The compensation of all officers shall be determined by the Board of Directors. The fact that any officer is a director shall not preclude him from receiving compensation or from voting upon the resolution providing compensation for himself as an officer.

## ARTICLE V.

## SHARES

Section 5.01. Certificates Representing Shares of Stock.  The shares of stock of the Corporation shall be represented by certificates in a form as shall be approved by the Board of Directors. Certificates of stock' shall be signed (either manually or by facsimile) by the president or a vice president, and by the secretary or assistant secretary.

Section 5.02. Transfer of Stock.  The Corporation shall register a stock certificate presented to it for transfer if the certificate is properly endorsed by the holder of record or by his duly authorized attorney, and the signature of the person or persons has been witnessed and reasonable assurance is given that the endorsements are effective. In order to register a stock certificate for transfer, the Corporation shall have no notice of any adverse claims or shall have discharged any duty to inquire into adverse claims.

Section 5.03. Lost, Stolen or Destroyed Certificates.  The Corporation shall issue a new stock certificate in the place of any certificate previously issued if the holder of record of the certificate: (a) makes proof in affidavit form that it has been lost, destroyed or wrongfully taken; (b) requests the issuance of a new certificate before the Corporation has notice that the Old certificate has been acquired by a purchaser for value in good faith and without

-19-

PIKNIK ONYX 02936

notice of any adverse claim; (c) gives bond in such form, and with surety or sureties, with fixed or open penalty, as the Corporation may direct, to indemnify the Corporation against any claim that may be made on account of the alleged loss, destruction, or theft of a certificate; and (d) satisfies any other reasonable requirements imposed by the Corporation. When a certificate has been lost, apparently destroyed, or wrongfully taken and the holder of record fails to notify the Corporation within a reasonable time after he has notice of it, and the Corporation registers a transfer of the shares represented by this certificate before receiving notification, the holder of record is precluded from making any claim against the Corporation.

Section 5.04. <u>Record Holders</u>.  The Corporation shall be entitled to treat the holder of record of any share or shares of its stock as the holder in fact and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice of the claim or interest, except as expressly provided by the laws of Alabama.

# ARTICLE VI.

## CORPORATE SEAL

The directors may provide a corporate seal in substantially the following form:

Piknik Products Company, Inc.

Corporate Seal

1999

Alabama

# ARTICLE VII.

## INDEMNIFICATION

-20-

PIKNIK ONYX 02937

Section 7.01. **Authority to Indemnify**.

(a)    Except as provided in Section 7.01(b), the Corporation will indemnify an individual made a party to a proceeding because he is or was a director or officer of the Corporation against liability incurred in the proceeding if:

(1)    The individual conducted himself in good faith; and

(2)    The individual reasonably believed:

(i)    In the case of conduct in his official capacity with the Corporation, that the conduct was in its best interests; and

(ii)    In all other cases, that the conduct was at least not opposed to the Corporation's best interests; and

(3)    In the case of any criminal proceeding, the individual had no reasonable cause to believe that his conduct was unlawful.

(b)    The Corporation will not indemnify a director or officer under this Section:

(1)    In connection with a proceeding by or in the right of the Corporation in which the director or officer was adjudged liable to the Corporation; or

(2)    In connection with any other proceeding charging improper personal benefit to the director or officer, whether or not involving action in his official capacity, in which the director or officer was adjudged liable on the basis that a personal benefit was improperly received by him.

(c)    The indemnification provided under this Section in connection with a proceeding by or in the right of the Corporation is limited to reasonable expenses incurred in connection with the proceeding.

Section 7.02. **Indemnification for Certain Claims**.    The Corporation will indemnify a director or officer who was successful, on the merits or otherwise, in the defense of

-21-

PIKNIK ONYX 02938

any proceeding, or of any claim, issue or matter in such proceeding, in which he was a party because he is or was a director or officer of the Corporation, against reasonable expenses incurred in connection therewith, notwithstanding that he was not successful on any other claim, issue or matter in any such proceeding.

**Section 7.03. <u>Advance for Expenses</u>.**

(a)     The Corporation will pay for or reimburse the reasonable expenses incurred by a director or officer who is a party to a proceeding in advance of final disposition of the proceeding if:

(1)     The director or officer furnishes the Corporation a written affirmation of good faith belief that he has met the standard of conduct described in Section 7.01;

(2)     The director or officer furnishes the Corporation a written undertaking, executed personally or on the director's or officer's behalf, to repay the advance if it is ultimately determined that the director or officer did not meet the standard of conduct, or is not otherwise entitled to indemnification under Section 7.01(b) unless indemnification is approved by a court having jurisdiction over the matter; and

(3)     A determination is made that the facts then known to those making the determination would not preclude indemnification under this Article.

(b)     The undertaking required by Section 7.03(a)(2) must be an unlimited general obligation of the director or officer but need not be secured and may be accepted without reference to financial ability to make repayment.

**Section 7.04. <u>Determination and Authorization of Indemnification</u>.**

(a)     The Corporation may not indemnify a director or officer under Section 7.01 unless authorized in the specific case after a determination has been made that indemnification of the director or officer is permissible in the circumstances because the director or officer has met the standard of conduct set forth in Section 7.01.

-22-

PIKNIK ONYX 02939

(b)    The determination shall be made:

(1)    By the Board of Directors by majority vote of a quorum consisting of directors not at the time parties to the proceeding;

(2)    If a quorum cannot be obtained under Section 7.04(b)(1), by majority vote of a committee duly designated by the Board of Directors (in which designation directors who are parties may participate) consisting solely of two or more directors not at the time parties to the proceeding;

(3)    By special legal counsel;

(i)    Selected by the Board of Directors or its committee in the manner prescribed in Section 7.04(b)(1) or (2); or

(ii)    If a quorum of the Board of Directors cannot be obtained under Section 7.04(b)(l) and a committee cannot be designated under Section 7.04(b)(2), selected by majority vote of the full Board of Directors (in which selection directors who are parties may participate); or

(4)    By the shareholders, but shares owned by or voted under the control of directors or officers who are at the time parties to the proceeding may not be voted on the determination. A majority of the shares that are entitled to vote on the transaction by virtue of not being owned by or under the control of such directors or officers constitute a quorum for the purpose of taking action under this section.

(c)    Authorization of indemnification and evaluation as to reasonableness of expenses shall be made in the same manner as the determination that indemnification is permissible, except that if the determination is made by special legal counsel, authorization of indemnification and evaluation as to reasonableness of expenses shall be made by those entitled under Section 7.04(b)(3) to select counsel.

Section 7.05. <u>Permissible Indemnification of Employees and Agents</u>.    The Corporation may, in the discretion of the Board of Directors, indemnify and advance expenses

-23-

PIKNIK ONYX 02940

under this Article to an employee or agent of the Corporation who is not a director or officer to the same or a lesser extent as to a director or officer.

Section 7.06. Insurance.  The Corporation may purchase and maintain insurance, or furnish similar protection (including but not limited to trust funds, self-insurance reserves, or the like), on behalf of an individual who is or was a director, officer, employee, or agent of the Corporation or who, while a director, officer, employee, or agent of the Corporation, is or was serving at the request of the Corporation as a director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plan, or other enterprise, against liability asserted against or incurred by him in that capacity or arising from his status as a director, officer, employee, or agent, whether or not the Corporation would have power to indemnity him against the same liability under Section 7.01 or 7.02.

Section 7.07. Non-Exclusive.  The indemnification authorized in and provided by this Article shall not be deemed exclusive of and shall be in addition to any other right to which those indemnified may be entitled under the Act or any other statute, rule of law, provisions of the Articles of Incorporation, agreement, or vote of the Board of Directors both as to action in his official capacity and as to action in another capacity while holding such office or position, arid shall continue as to an individual who has ceased to be a director or officer and shall inure to the benefit of the heirs, executors and administrators of such individual.  The Corporation may by separate agreement indemnify and hold harmless employees and agents of the Corporation who are not directors or officers of the Corporation to the equivalent or lesser extent than as provided in this Article.

-24-

PIKNIK ONYX 02941

Section 7.08. <u>Definitions</u>.    The terms "corporation," "director," "officer," "expenses," "liability," "official capacity," "party," and "proceeding" shall have the same meaning for purposes of this Article as defined in <u>Code of Alabama 1975</u>, section 10-2B-8.50.

## ARTICLE VIII.

## AMENDMENT OF BYLAWS

### Section 8.01. <u>Amendment by Board of Directors and Shareholders</u>.

(a)    The Board of Directors may amend or repeal these Bylaws unless:

(1)    The Articles of Incorporation or the Act reserves that power exclusively to the shareholders in whole or part; or

(2)    The shareholders in amending or repealing a particular provision of these Bylaws provide expressly that the Board of Directors may not amend or repeal that provision.

(b)    The shareholders may also amend or repeal these Bylaws.

### Section 8.02. <u>Bylaw Increasing Quorum or Voting Requirement for Shareholders</u>.

(a)    If authorized by the Articles of Incorporation, the shareholders may adopt or amend a provision of these Bylaws that fixes a greater quorum or voting requirement for shareholders (or voting groups of shareholders) than is required by the Act.  The adoption or amendment of a provision of these Bylaws that adds, changes, or deletes a greater quorum or voting requirement for shareholders must meet the same quorum requirement and be adopted by the same vote and voting groups required to take action under the quorum and voting requirement then in effect or proposed to be adopted, whichever is greater.

(b)    A provision of these Bylaws that fixes a greater quorum or voting requirement for shareholders under Section 8.02(a) may not be adopted, amended, or repealed by the Board of Directors.

-25-

PIKNIK ONYX 02942

### Section 8.03. Bylaw Increasing Quorum or Voting Requirement for Directors.

(a)    A provision of these Bylaws that fixes a greater quorum or voting requirement for the Board of Directors may be amended or repealed:

        (1)    (1) If originally adopted by the shareholders, only by the shareholders;

        (2)    If originally adopted by the Board of Directors, either by the shareholders or by the Board of Directors.

(b)    A provision of these Bylaws adopted or amended by the shareholders that fixes a greater quorum or voting requirement for the Board of Directors may provide that it may be amended or repealed only by a specified vote of either the shareholders or the Board of Directors.

(c)    Action by the Board of Directors under Section 8.03(a)(2) to adopt or amend a bylaw that changes the quorum or voting requirement for the Board of Directors must meet the same quorum requirement and be adopted by the same vote required to take action under the quorum and voting requirement then in effect or proposed to be adopted, whichever is greater.

### ARTICLE IX.

### MISCELLANEOUS

Section 9.01. Contracts.  The Board of Directors may authorize any officer or officers, agent or agents, employee or employees to enter into any contract or other instrument on behalf of the Corporation.  The authority granted may be general or confined to specific instances.  Except as provided in this Section or as authorized by the Board of Directors, no officer, agent, or employee, other than the president, or a vice president, secretary, or treasurer,

-26-

PIKNIK ONYX 02943

shall have any power or authority to bind the Corporation by any contract or engagement, or to pledge its credit or to render it liable, for any purpose or for any amount.

Section 9.02. <u>Deposits, Checks and Drafts</u>. All funds of the Corporation shall be deposited from time to time to the credit of the Corporation in such banks or other depository institutions as the Board of Directors may from time to time designate. All checks, notes, drafts, bills of exchange, acceptances or other orders for the payment of money or other evidences of the indebtedness of the Corporation shall be signed as shall from time to time be designated by resolution of the Board of Directors.

Section 9.03. <u>Distributions to Shareholders</u>.

(a)     The Board of Directors may authorize and the Corporation may make distributions, subject to restriction by the Articles of Incorporation, Section 9.03(c) and the Act.

(b)     If the Board of Directors does not fix the record date for determining shareholders entitled to a distribution (other than one involving a repurchase or reacquisition of shares), it is the date the Board of Directors authorizes the distribution.

(c)     No distribution may be made if, after giving it effect:

(1)     The Corporation would not be able to pay its debts as they come due in the usual course of business; or

(2)     The Corporation's total assets would be less than the sum of its total liabilities plus (unless the Articles of Incorporation permit otherwise) the amount that would be needed, if the Corporation were to be dissolved at the time of distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

Section 9.04. <u>Severability</u>. The invalidity or unenforceability of any particular provision of these Bylaws shall not affect any other provisions, and these Bylaws shall be construed in all respects as if any invalid or unenforceable provisions were omitted.

-27-

PIKNIK ONYX 02944

Section 9.05. <u>Gender and Number</u>.    References in these Bylaws to the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

Section 9.06. <u>Descriptive Headings</u>.    The descriptive headings used in these Bylaws are for convenience of reference only and shall not be deemed to alter or affect the meaning of any provision of these Bylaws.

PIKNIK ONYX 02945

## CERTIFICATE OF CORPORATE SECRETARY

I, Herman R. Loeb, Secretary of Piknik Products Company, Inc. certify that the

foregoing Amended and Restated Bylaws, consisting of Articles I to IX, inclusive, constitute a

true and complete copy of the Amended and Restated Bylaws of the Corporation as adopted by

consent of the sole director of the Corporation dated July 18, 2003.

Herman R. Loeb,
Secretary

(CORPORATE SEAL)

-29-

PIKNIK ONYX 02946

**EXHIBIT C**
**ARTICLES OF ORGANIZATION**

5

PIKNIK ONYX 02947

CORP   218 PAGE   892



\# 205314

# ARTICLES OF INCORPORATION
## OF
### PIKNIK PRODUCTS COMPANY, INC.
(an Alabama corporation)

September 21, 1999

**CAPELL & HOWARD, P.C.**

150 South Perry Street

Post Office Box 2069

Montgomery, Alabama  36102-2069



RECEIVED

OCT - 1 1999

SECRETARY
OF STATE

PIKNIK ONYX 02948

CORP    218 PAGE    893

## ARTICLES OF INCORPORATION
## OF
## PIKNIK PRODUCTS COMPANY, INC.

### ARTICLE I.

### NAME

The name of the corporation is Piknik Products Company, Inc. (the "Corporation").

### ARTICLE II.

### AUTHORIZED SHARES

The total amount of the authorized stock of the Corporation is 5000 shares of common stock having a par value of $1.00 each. All of the authorized stock is common stock and none is preferred stock or stock of a different class.

### ARTICLE III.

### INITIAL REGISTERED OFFICE AND AGENT

The location of the initial registered office of the Corporation in Alabama is located at 3806 Day Street, Montgomery, Alabama 36108. The mailing address of the initial registered office of the corporation is Post Office Box 9338, Montgomery, Alabama, 36108. The name of the initial registered agent of the Corporation at that address is Herman R. Loeb.



RECEIVED

OCT - 1 1999

SECRETARY
OF STATE

PIKNIK ONYX 02949

CORP   218 PAGE   894

## ARTICLE IV.

### INCORPORATOR

The name and address of the incorporator are:

| <u>Name</u> | <u>Address</u> |
|---|---|
| Bryan K. Prescott | 150 South Perry Street<br>Montgomery, Alabama 36104 |

## ARTICLE V.

### INITIAL DIRECTOR

The initial board of directors of the Corporation consists of one person. The name and address of the person who is to serve as director until the first annual meeting of the shareholders or until his successor is elected and qualified are:

| <u>Name</u> | <u>Address</u> |
|---|---|
| Herman R. Loeb | 3806 Day Street<br>Montgomery, Alabama 36108 |

## ARTICLE VI.

### PURPOSE

**Section 6.01.   <u>Purpose</u>.**   The purpose for which the Corporation is organized is to engage in the business of developing, manufacturing , marketing, and selling processed foods and related products and to engage in the transaction of any or all lawful business for which

-2-

PIKNIK ONYX 02950

CORP   21B PAGE   895

corporations may be incorporated under the Alabama Business Corporation Act, as amended from time to time (the "Act").

Section 6.02.    **Pursuit of Purposes and Exercise of Powers in Other Jurisdictions**. The Corporation may pursue its purposes and exercise its powers in any state, territory, district or possession of the United States, or in any foreign country, to the extent that these purposes and powers are not forbidden by the law of that state, territory, district or possession of the United States, or by the law of that country. The Corporation, if it so elects, may limit the purposes that it proposes to carry out or the powers it proposes to exercise in any application to do business in any state, territory, district or possession of the United States or in any foreign country.

## ARTICLE VII.

### CERTAIN POWERS AND RIGHTS

Section 7.01.  **Preemptive Rights Abolished**.  The preemptive rights granted to shareholders by the Act are expressly denied to shareholders of the Corporation.

Section 7.02.  **Exculpation**.  A director of the Corporation shall not be liable to the Corporation or its shareholders for money damages for any action taken, or failure to take action, as a director, except for (a) the amount of a financial benefit received by such director to which such director is not entitled; (b) an intentional infliction of harm by such director on the Corporation or its shareholders; (c) a violation of Code of Alabama 1975, section 10-2B-8.33, or any successor provision to such section; (d) an intentional violation by such director of criminal law; or (e) a breach of such director's duty of loyalty to the Corporation or its shareholders. If the Act, or

-3-

PIKNIK ONYX 02951

CORP   218 PAGE   896

any successor statute thereto, is amended to authorize the further elimination or limitation of the liability of a director of a corporation, the liability of a director of the Corporation, in addition to the limitations on liability provided in this Section, shall be limited to the fullest extent permitted by the Act, or any successor statute thereto. Any repeal or modification of this Section by the shareholders of the Corporation shall be prospective only and shall not adversely affect any limitation of the liability of a director of the Corporation existing at the time of such repeal or modification.

The undersigned, acting as incorporator under the Act, adopts and signs these Articles of Incorporation, this September 21, 1999.

Bryan K. Prescott

INCORPORATOR

This instrument was prepared by:

Bryan K. Prescott, Esq.
Capell & Howard, P.C.
105 South Perry Street
Post Office Box 2069
Montgomery, Alabama 36102-2069
(334) 241-8000

CERTIFIED COPY
I hereby certify this document was filed in
Montgomery County, Alabama on 9/20/1999
Book CoRP - 218
Page 892
Reese McKinney, Jr.
Judge of Probate

State of Alabama Montgomery Co
I Certify This Document
was filed on
9/20/99 3:49:06 PM   Abstract# 8450
Reese McKinney, Jr.
Judge  of Probate

| Corporation Profit |       | $ 40.00 |
|--------------------|-------|---------|
| 1 Index Fee        |       | $5.00   |
| 5 @0.00 per page fee |     | $0.00   |
| 1 Recording Fee    |       | $35.00  |

- 4 -

PIKNIK ONYX 02952

CORP   218 PAGE   967



# ARTICLES OF CORRECTION
## TO THE
## ARTICLES OF INCORPORATION
## OF
## PIKNIK PRODUCTS COMPANY, INC.

Pursuant to the provisions of Code of Alabama 1975, section 10-2B-1.24, Piknik Products Company, Inc., an Alabama corporation (the "Corporation"), adopts the following Articles of Correction to its Articles of Incorporation:

1.    **Document Corrected**.   The document being corrected by these Articles of Correction are the Articles of Incorporation of the Corporation, which were filed with the Judge of Probate of Montgomery County on September 20, 1999.

2.    **Clerical Error**.  The purpose of these Articles of Correction is to correct the date the Articles of Incorporation were executed.  The cover page and the last sentence in the Articles of Incorporation provide that the Articles of Incorporation were executed on September 21, 1999. The date of the cover page to the Articles of Incorporation is corrected to read "September 20, 1999." The last sentence to the Articles of Incorporation is deleted in its entirety and a new last sentence to the Articles of Incorporation is substituted therefor which shall read as follows: "The undersigned, acting as incorporator under the Act, adopts and signs these Articles of Incorporation, this September 20, 1999."

Dated:  September 23, 1999

PIKNIK PRODUCTS COMPANY, INC.



By: _____
Herman K. Loeb
Its President

State of Alabama Montgomery Co
I Certify This Document
was filed on
9/24/99 4:28:59 PM   Abstract# 8541
Reese McKinney, Jr.
Judge  of Probate

CERTIFIED COPY
I hereby certify this document was filed in
Montgomery County, Alabama on 9/24/1999
Book CORP- 218
Page 967
_____
Judge of Probate

RECEIVED
OCT - 1 1999
SECRETARY
OF STATE

| Articles of Correction | $ 15.00 |
|---|---|
| 1    Index Fee | $5.00 |
| 1    $0.00per page fee | $0.00 |
| 1    Recording Fee | $10.00 |

PIKNIK ONYX 02953